WILLIAM WOODWARD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Pleas in abatement setting up mere irregularities in the drawing and summoning of juries are not looked upon with favor by the courts, and the greatest legal accuracy and precision are required in their allegations, and they must be free from uncertainty and ambiguity.

2. The second section of Chapter 4015, acts of 1891, R. S., page 960, contemplated annual selections of jury lists by the county commissioners, and where it is shown that a list of persons to serve as jurors had been selected by said commissioners for the year, the presumption is, in the absence of sufficient showing to the contrary, that the list was selected at a meeting held the first week in January of that year. The proviso in said section in reference to selecting a jury list in counties where Criminal Courts of Record exist contemplated the existence of such courts at the time of the annual selection of the jury lists by the commissioners, and the creation of a Criminal Court of Record in a county after the selection of such a list for that county will not affect the

William Woodward v. The State of Florida.—Syllabus.

list already made, nor will it affect the official action of the commissioners in reference to selecting a jury list until the time arrives for the annual selection for the succeeding year.

3. The provision in Section 2804 R. S., that "in counties wherein Criminal Courts of Record are; established, no grand jury shall be summoned to attend at any term of the Circuit Court, unless the Circuit Judge shall file with the clerk a written order directing a grand jury to be summoned,'' was not intended to limit or regulate the power of the court in term time to direct the summoning of a grand jury where none had been ordered and summoned for the term; and a plea in abatement alleging that the indictment against the accused was found by an illegal grand jury because no written order was filed by the Circuit Judge with the clerk directing that a grand jury be summoned to attend and serve at said term of court, is defective as it does not exclude the presumption that the indictment was presented by a legally constituted grand jury, or that the court did not in term time legally organize the jury that presented the indictment.

4. The notice provided in Section 4, Chapter 4015, acts of 1891, for drawing jurors is material, and the drawing of a jury without giving such notice would be irregular.

5. An issue made on a plea in abatement, setting up that the notice of the drawing of jurors required in Section 4, Chapter 4015, had not been given, is one of fact to be tried by a jury, and a refusal to submit such an issue to a jury, and the disposition of it by the judge, will be error.

6. To an allegation in a plea in abatement that the grand jury did not select one of its members as a foreman, the State replied that the grand jury did select one of its members, naming him, as foreman, as shown by the records of the court; Held, that an issue tendered on the replication presented an issue to be tried by the court on the inspection of the record, and not one to be submitted to a jury.

7. Where the record shows that the requisite jurors to form a grand jury have been sworn touching their qualifications as such and found qualified, and then, without taking the oath prescribed for grand jurors retired under charge of an officer of the court and selected one of their number, naming him, as foreman, after which they reported to the court the name of the juror so elected as foreman, and he was recognized by

the grand jury and court as foreman during the term and acted as such, this will amount to a ratification of the election of such foreman, if it be that the foreman should be selected after the jury is sworn.

8. A witness can not on cross-examination be interrogated as to facts and circumstances not connected with the matters stated on the direct examination, but the rule permits on the cross-examination an inquiry into all the facts and circumstances connected with the matters brought out in the examination in chief.

Writ of Error to the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*J. B. Wall* and *Palmer W. Smith* for Plaintiff in Error.

*W. B. Lamar, Attorney-General,* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted on the 10th day of May, A. D. 1893, during a term of the Circuit Court for Hillsborough county, for the murder of Samuel Kelly, and was convicted on the 15th day of the same month, of murder in the first degree as charged in the indictment. Before arraignment and trial, defendant filed a plea in abatement, and it appears that after a demurrer on the part of the State had been sustained as to a part, and overruled as to the remainder of this plea, defendant asked leave to withdraw the plea filed, and to interpose an amended plea in abatement then presented, which was granted on condition that the demurrer to the plea withdrawn and the ruling of the court thereon should apply to the amended plea.

The condition of the record as to the plea in abatement is that the defendant filed such plea alleging that the indictment returned against him was found by an illegally constituted grand jury, as follows:   That the board of county commissioners for Hillsborough county did not make out a list of not less than four hundred and seventy-five, nor more than five hundred names of registered voters who had paid their last assessed capitation tax, to serve as jurors, and cause such list to be signed by the chairman of said board and forthwith delivered to the clerk of said court prior to the finding and return of the indictment against defendant; that said clerk did not at least fifteen days before the sitting of the said term of court draw from any box containing not less than four hundred and seventy-five, nor more than five hundred, names of registered voters, or supposed registered voters, the names of twelve persons to serve as grand jurors at said term of court; that the time and place of of drawing the names of twelve persons to serve as grand jurors for said term of court were not advertised by written notices posted in three public places in said county ten days before the day on which the names of such persons were drawn from a box by the clerk of said court; that said grand jury did not select one of their number to be and to act as foreman of said jury; and that no written order was filed by the Circuit Judge with the clerk of the court directing that a grand jury be summoned to attend and serve at said term of court.   A demurrer filed by the State was sustained, as we understand the record, to all the grounds of the plea except as to the allegations in reference to the notice of drawing the grand jury, and that the grand jury did not elect a foreman, and as to these the demurrer was overruled.

The State then filed a replication alleging that notice of the drawing of the grand jury that presented the indictment against the defendant was given by posting written notices in three public places in Hillsborough county ten days before the 17th day of April, 1893, when said jury was publicly drawn in the court-house in said county, and that the grand jury did elect one of their number, to-wit: Henry H. Scarlett, as foreman of the jury, "as shown by the records of this court." The defendant moved to strike out the words in quotation marks, and this motion was overruled. Defendant joined issue upon the replication and demanded a trial of the same by jury, but the court declined to call a jury, and upon hearing overruled the plea in abatement. The rulings of the court sustaining the demurrer to the extent mentioned, refusing to strike out the quoted words in the replication, declining to submit the issues to a jury, and overruling the plea in abatement, are assigned as errors.

The case was tried before the act of 1893, Chapter 4122, became law. By the second section of the act of 1891, Chapter 4015, the boards of county commissioners of the several counties of the State were directed at meetings to be held the first week in January of each year, or as soon thereafter as practicable, to select from the list of registered voters who had paid their last assessed capitation tax in their respective counties, a list of not less than 290, or more than 310, persons properly qualified to serve as jurors, and possessing certain qualifications mentioned in the act, and which lists shall be signed by the chairman of such boards and forthwith delivered to the clerk, and by him recorded in the minutes of the board. The following provisos are added: "Provided, however, that in counties where county criminal courts now

exist or may hereafter be established, the county com- missioners of said counties shall make out a list of not less than four hundred and seventy-five (475), nor more than five hundred (500), names of registered voters, who have paid their last assessed capitation tax, to serve as jurors; provided, that if in any of the counties of the State the county commissioners shall not be able to select the number required by this sec- tion, they shall be authorized to select a less number, to be the highest number possible.'' On the 10th day of April 1893, the act creating the Criminal Court of Record for Hillsborough county went into effect, and it is contended by counsel for plaintiff in error that after this date the box from which the jurors were drawn should have contained not less than 475, nor more than 500, names. It is not stated in the plea before us that the county commissioners for Hillsborough county did not prior to the passage of the act creating the Criminal Court of Record for that county select the list of jurors as required by the act of 1891, and the legal presumption is that they had done so. They were directed to perform this duty at the meeting to be held the first week in January, or as soon thereafter as practicable, and the presumption is that they per- formed their duty. The statute of 1891 contemplated annual selections of jury lists on the part of the county commissioners, and in making a list for any year they were of course governed by the law in force at the time of selection. The proviso in reference to selecting a jury list in counties where Criminal Courts of Record exist, contemplated that such courts existed or had been established at the time of the annual se- lection of such list by the commissioners. The crea- tion of a Criminal Court of Record in any county after

33

the selection of a jury list for the year would not affect that list, nor would it affect the official action of the commissioners until the time arrived for the selection of a jury list for the succeeding year. This being the case, it becomes apparent that the first and second grounds of the plea are bad, and the action of the court in sustaining the demurrer as to them was proper. These grounds of the plea are faulty in other respects. While it is alleged that the county commissioners did not select a list of jurors of not less than 475, nor more than 500 names, and that the clerk of the Circuit Court did not fifteen days before the sitting of the court draw from a box containing such number of names twelve persons to serve as grand jurors, it is not shown how the action of the commissioners and the clerk in the particulars mentioned affected the indictment returned against defendant. It is not alleged that the indictment was found by a grand jury drawn from an illegal list or box, or that said grand jury was drawn from any box. In the event a grand jury has not been properly drawn or summoned to attend a term of court, the judge has the power in term to have a jury drawn, or to direct the summoning of one from the body of the county at large. The greatest accuracy and precision are required in pleas in abatement setting up irregularities in the selection or drawing of jurors, and such pleas must be free from uncertainty and ambiguity. Reeves vs. State, 29 Fla., 527, 10 South. Rep., 901.

Section 2804 Rev. Stats. provides that "in counties wherein Criminal Courts of Record are established, no grand jury shall be summoned to attend at any term of the Circuit Court, unless the Circuit Judge shall file with the clerk a written order directing a grand jury to be summoned." The last ground of the

plea to which the demurrer was sustained, alleges that no such order was filed with the clerk directing that a grand jury be summoned to attend and serve at the term of the court when defendant was indicted. When a Criminal Court of Record is established in a county the Circuit Court ceases to exercise original jurisdiction in criminal cases arising therein, except capital offenses, and when no such offense has been committed in the county since the preceding term of the Circuit Court, the necessity for a grand jury may not exist. The purpose of this statute is to save the expense attending the summoning of a grand jury at a term of the Circuit Court in counties where Criminal Courts of Record exist when none is needed. The Criminal Court of Record for Hillsborough county was established on the 10th day of April, 1893, and the Spring term of the Circuit Court for that county convened on the 8th day of May following. The third section of the act of 1891, Chapter 4015, provides that "at least fifteen days before the sitting of any regular term of the Circuit Court at which a jury shall be required, the clerk of the court, in the presence of the county judge, or in his absence a justice of the peace of the county, and the sheriff or a deputy sheriff of the county, shall proceed to draw from the box the names of twelve persons to serve as grand jurors at such court." The plea does not allege that the grand jury for the Spring term, 1893, of the Circuit Court for Hillsborough county was not drawn and summoned before the Criminal Court of Record for the county was established; furthermore it was not intended by Section 2804 of the Revised Statutes, directing a written order to be filed with the clerk for the summoning of a grand jury, to limit or regulate the power of the court in term time in reference to the organization of

juries. When the court meets in session if it should be ascertained that no grand jury had been properly drawn or summoned, one can then be ordered in accordance with statutes on the subject, and the order recorded upon the minutes of the court. The plea alleges that no written order of the judge was filed with the clerk directing that a grand jury be summoned to attend and serve at the term of the court when defendant was indicted. The plea does not exclude the presumption that the indictment was presented by a legally constituted grand jury. State vs. Brooks, 9 Ala., 9. It does not allege that the grand jury that presented the indictment was drawn and summoned after the creation of the Criminal Court of Record for Hillsborough county when it became the duty of the Circuit Judge to file the order for the summoning of the jury, or that the court did not properly in term time make all necessary orders in reference to the organization of said jury. Pleas in abatement setting up mere irregularities in the drawing and summoning of juries are not looked upon with much favor by the courts, and strict rules of pleading are enforced as to them. The court did not err in sustaining the demurrer to this ground.

The demurrer was overruled as to the other two grounds of the plea, and the issues joined on them were disposed of by the court. The first of these grounds alleges that the time and place of drawing the names of twelve persons to serve as grand jurors for the term of court when defendant was indicted, were not advertised by written notices posted in three public places in said county for ten days before the day when the names of such persons were drawn from a box by the clerk of said court. From what has already been said it becomes apparent that

this ground of the plea is also faulty, and the demurrer should have been sustained as to it. It simply alleges that there was no advertisement of the time and place of the drawing of the names of twelve persons from a box by the clerk to serve as grand jurors for the term of court, but how this affected the indictment returned against the defendant is not shown. The court, however, overruled the demurrer and the State Attorney replied that notice of the drawing of the grand jury that found the indictment against the accused was given by posting written notices in three public places in the county ten days before the 17th day of April, 1893, when said jury was publicly drawn in the court house of said county. Issue was joined on this, and on trial by the court was found in favor of the State. Accepting here as was done by the court below as an issue tendered on the pleas and replication thereto that notice of the drawing of the grand jury was given in accordance with the provisions of the act of 1891, we must determine whether the court was in error in not submitting such issue to a jury for trial. Our view of the statute of 1891, Chapter 4015, is that the notice therein provided for the drawing of the grand jury required is material, and that a jury drawn without such notice should not be accepted by the court as a properly drawn grand jury. The trial judge in the case before us regarded such notice as essential and required an issue to be made up involving an inquiry into the giving of such notice. This issue was one of fact resting *in pais*, and according to the long established rule requiring such issues to be tried by a jury, it should have been submitted to such body for trial. The court tries questions of law, and the jury passes upon questions of fact, and this rule applies to issues on pleas in abatement as well as to

other issues. This common law rule has been recognized and declared by statutory enactment in this State. Section 2904 Rev. Stats. The defendant in the case before us did not waive his right to have the jury try the issue accepted by the court, but insisted on it, and the refusal of the court to so submit the issue, it seems to us, was a violation of the rule stated. It may be contended that the giving of the notice of the drawing of the grand jury under the circumstances alleged in the replication can not constititute the basis of a material issue in this case for the reason that no authority existed for the drawing of the jury. As appears from what is stated in the replication, the notice of the drawing of the jury in question was posted before the date when the Criminal Court of Record for Hillsborough county was established, but the drawing of the jury took place on the sixth day after the one on which the court had its existence. The replication alleges the drawing of the jury on the 17th of April, 1893, but it is not stated that any order of the Circuit Judge directing the summoning of a grand jury was filed with the clerk before the drawing occurred. Where the clerk is directed by the judge in vacation to summon a grand jury in a county where a Criminal Court of Record exists, it is contemplated that the order shall be given before proceedings are begun by the officers for the regular drawing of jurors for a term. In the present case it must be assumed that no order was filed with the clerk for the summoning of a grand jury before the notice of the drawing was given for the reason that there was no law then in force making it the duty of the court to file such order. The giving of the notice of the drawing of the jury at the time it was given, was legal and, in our judgment, it dispensed

with the necessity of any written order from the judge
directing the drawing to take place. At all events we
are impressed with the view that if the grand jury in
question was drawn after proper notice under the cir-
cumstances mentioned, and the court proceeded in
term time to organize the grand jury so drawn, it would
amount to a judicial determination of the necessity of
the presence of a grand jury at the term. The result
is that the issue presented by the replication to the
plea was material, tendering a question of fact involv-
ing the regularity of the drawing of the grand jury
that found the indictment against defendant, and the
court should have submitted it to the jury for decision
under proper instructions.

The other ground of the plea upon which an issue
was made and tried by the court, is that the grand jury
did not select one of its members as foreman of that
body. The State Attorney replied that the grand jury
did select one of its members, to-wit: Henry H.
Scarlett, as foreman, as shown by the records of the
court. The motion to strike out the last paragraph of
the replication was properly overruled. Defendant
had the right to test the legal sufficiency of the repli-
cation by demurrer, but he had no right to have the
court to strike out a clause in it, and leave the remain-
der as a pleading. The issue tendered on the repli-
cation is that Henry H. Scarlett, a member of the
grand jury, was elected as its foreman as shown by
the records of the court, and this presented an issue
to be tried by the court on an inspection of the record,
and not one to be submitted to a jury. Chase vs. State,
46 Miss., 683; Atkins vs. State, 16 Ark., 568. Consid-
ering the issue on this part of the plea as we find
it, the court committed no error in its ruling thereon.

The indictment returned against the defendant is endorsed "a true bill," and signed by Henry H. Scarlett, foreman, and the record of the court in reference to the organization of the grand jury, copied into the transcript, recites that the jurors—naming them—having been sworn touching their qualifications as jurors, were found qualified, and that said grand jurors retired to their room in charge of a sworn bailiff to select their foreman, and returned into court and reported that they had elected Henry H. Scarlett as their foreman. It is then recited that the oath prescribed for grand jurors was taken by Scarlett and one other member, and after them the proper oath was administered to the others. The defendant introduced Scarlett and he testified without objection that after the members of the grand jury had been examined and found qualified to serve as grand jurors, but before taking the oath prescribed by law for them to take before entering upon the discharge of their duties as grand jurors, they elected him to act as foreman of the grand jury, and after he had been elected, the grand jury returned to the court room and took the oath prescribed by law; that thereupon the court charged them and they retired to their room, elected a clerk and proceeded to investigate the matters brought before them; and that there was no election of a member of said grand jury to act as foreman after the final oath had been taken as stated. The point that counsel for defendant insist on under the ground of the plea now being considered is that before a grand jury is sworn it can not elect a foreman or do anything else in the capacity of a grand jury. The statute provides that "the grand jury shall select its own foreman," sec. 2809 Rev. Stats., and it is contended that a grand jury in contemplation of this statute means a duly organ-

ized and sworn body.   Whatever force  there  may  be
in this  view, it  can be of no  avail,  we think, to the
defendant in this case.   The record shows that Scarlett
acted  as foreman of the grand jury after  it was duly
organized and sworn, and that he was so recognized by
that body as well as the court.   This, in our judgment,
would be a ratification of the former election, if  it was
not competent for the grand jury to make the selection
when it did.

There are many  assignments of  error made  in this
case based upon the drawing, summoning  and empan-
eling of  the petit jury that returned the verdict against
the  defendant. but in view of  the fact  that the judg-
ment must be reversed on  account of  the error shown,
and  another that will  be pointed out, we refrain from
any discussion of  these  assignments of  error.   What
is here said  is deemed sufficient to  guide the court in
reference to the objections as to the  validity of  the in-
dictment.

The error  referred to relates to the  exclusion of  tes-
timony desired to  be  brought out on behalf of the
defendant.   The deceased was shot in a small room by
the defendant as the latter was leaving the room,  and
as he was at or  near  a door  opening  into the room.
There  was evidence of  a difficulty  between these par-
ties in the room  before  the shooting.   The defendant
in his statement said that he was struck in his left side
by the deceased without provocation and tumbled over
a chair, and when he fell over, deceased rushed up and
kicked him in  his left side,  and drew a knife on him.
In rebuttal the State introduced a witness  who stated
that he  was in the  room at the  time of the difficulty
between  the  deceased and  defendant.   He  was
asked if the deceased  kicked the defendant during
any part  of the difficulty,  to which the  witness

replied, "I never saw him." He was requested to answer yes or no, and he said "no." He also stated that if the deceased had kicked defendant he (witness) would have seen it. On cross-examination counsel for defendant asked the witness if he saw the deceased strike the defendant, and on objection of the State the question was excluded. Exception to the ruling of the court was properly made, and the ruling is assigned as error here. We do not see how this ruling can be sustained. The question excluded bore upon a material phase of the defense. According to the defendant's statement the fatal shot was fired immediately after he had been knocked over a chair, kicked in the side and pursued by the deceased to the door with a knife in his hand. It was competent and clearly material for the defendant to show, if he could, that the deceased struck him in the room just before the shooting, and such evidence would be proper on the question of premeditation, if for no other purpose. It is directly connected with the examination in chief and relates to a part of the same transaction there brought out. It was error to exclude this question. Williams vs. State, 32 Fla., 315, 13 South. Rep., 834. We have not fully considered the special charge given to the jury by the court at the instance of the State, but deem it proper to call the attention of the court to it for further consideration, should it be requested on another trial.

The judgment is reversed and a new trial awarded, and it will be so ordered.