WILLIAM A. HICKS, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion filed February 13, 1929.

200

C. E. *Farrington, Thomas M. Lockhart* and *Price, Price, Neeley & Kehoe,* for Defendant in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

ELLIS, J.—William A. Hicks in July, 1927, at a special term of the Circuit Court for Broward County, was indicted for the murder of Robert R. Barber in August, 1925. The indictment contained four counts. The first charged that he killed Barber by stabbing and cutting him with a knife in the stomach and body; the second by shooting him with a pistol; the third by throwing him into a canal and drown-

ing him, and the fourth by all the means as alleged in the three preceding counts.

The indictment was attacked by five pleas in abatement to which demurrers were interposed. Pending the decision upon the demurrer, counsel for defendant moved the court for leave to file three additional pleas in abatement. The demurrer was sustained and leave to file the additional pleas in abatement denied. After a motion entitled a motion for a bill of particulars was denied the defendant pleaded not guilty.

Subsequently to these proceedings the judge of the Twenty-third Judicial Circuit, upon affidavit made by the defendant that the judge was disqualified to try the case, recused himself and the cause was tried by a judge from another circuit appointed by the Governor to hold the special term of court in Broward county which had been called. The trial resulted in a verdict of guilty of murder in the first degree with recommendation to the mercy of the court and judgment on the verdict was entered, to which a writ of error was taken.

Two fatal errors appear at the beginning of the trial of this case which render it unnecessary for this Court to consider all the assignments of error. They consist in sustaining the demurrer to the pleas in abatement and in the order denying the motion for leave to file additional pleas in abatement. The questions are sufficiently presented by several assignments of error of which there are ninety-seven in all.

The third plea averred that C. N. Justice was one of the grand jury which, at the special term of the Circuit Court for Broward County held in July, 1927, returned the indictment for murder against the defendant; that although Justice sat as a member of the grand jury and participated in its deliberations he was not selected in the manner re-

quired by the law; his name was not among those contained in the list which the county commissioners selected as the statute directs; that the list selected by the county commissioners was not signed by the chairman of the board nor was it delivered to the Clerk; that upon convening the special term of the court at which the defendant was indicted, the judge did not draw from the box purporting to contain the names of persons to serve as grand jurors the name of C. N. Justice; that his name was not included in the *venire facias* issued and delivered to the sheriff, which writ contained the names of persons drawn by the court from the jury box to serve as jurors; that nevertheless C. N. Justice with sixteen others constituted the grand jury which returned the indictment against the defendant; that the name of the said Justice had never been placed in the jury box, nor had he been selected by the county commissioners to serve as a juror from among the citizens of the county, nor had his name been placed in the jury box by order of the court.

The three additional pleas in abatement, which the defendant asked leave to file but which was denied to him, set forth more clearly the facts averred in the third plea in abatement and in addition thereto averred that the jury list selected by the county commissioners did contain the name of G. C. Justice but that he was not the same person as C. N. Justice; that the sheriff amended the list of persons whose names were included in the *venire facias* and struck "out the initial of G. C. before the name Justice and wrote over the same the initial C. N. Justice, whose name was included in his return to this Court, and which person, C. N. Justice, was impanelled as one of said jurors, but that the said C. N. Justice so impanelled and so participating in the return of said indictment was a juror selected by the Sheriff of Broward County, Florida, and a different and distinct person from G. E. Justice, whose name is included in the purported list of jurors contained in the jury box."

It was also averred in those pleas in substance that the Judge drew the names of thirty-six persons from a box but the names were not selected as required by Section 2772 Rev. Gen. Stats.; that the names so drawn were included in a *venire facias* and delivered to the sheriff; that the writ was returnable instanter. The names were set forth in the plea and included the name of G. C. Justice, but that the sheriff for unlawful purposes summoned only twenty-one persons, one of whom was C. N. Justice; that four of the twenty-one were excused by the court and the grand jury was composed of the seventeen remaining; that the court did not comply with the requirements of the Act of 1927 by placing the names of the persons summoned in a box and drawing therefrom the names of eighteen to serve as a grand jury.

It was also averred that the jury thus selected began their deliberations on July 7th and completed their work on the 11th, made their final report and were discharged; that the sheriff on his own motion and on the suggestion of private counsel "employed against the defendant" recalled and reassembled the jury; that the persons which had composed it were not sworn again, or charged or impaneled by the court, but they reassembled, deliberated upon the charges against the defendant "and in the presence and under the direction of council of Thomas G. Farmer, Jr. who was not the State's Attorney, and not sworn as an assistant to the State's Attorney, did thereafter, on the 12th day of July, 1927, return the indictment herein."

Neither the pleas filed or those proffered are models of brevity or certainty. They do not measure up strictly to the requirements of clearness in such pleas, but we think that such averments of fact were sufficiently well made to challenge the legality of the indictment. If the facts

averred were true, no grand jury had been selected and impaneled in accordance with the requirements of law. The investigating body in and for the county which had functioned as a grand jury had been discharged by the court after its final presentment had been made. It was reassembled without authority of law, proceeded to inquire into the charges against the defendant without legal right and violated the law regulating the conduct of grand jury deliberations by permitting the presence of privately retained counsel in its room and acting under his direction and advice.

An indictment by such a body under such circumstances is a nullity. The pleas were sworn to by the defendant and were tendered before the plea of not guilty.

A person charged with the commission of a capital offense is constitutionally entitled to be proceeded against by an indictment by a grand jury. Sec. 10 D. R. Constitution.

One unauthorized or incompetent person acting with the grand jury vitiates the indictment if the objection is duly taken. See 1 Bishop on Criminal Procedure, Sec. 856 A; Kitrol v. State, 9 Fla. 9.

When a grand jury is illegally constituted or organized the defendant may raise the objection by a plea in abatement. An irregularity in the summoning or impaneling of the jury, or selecting of the jurors may be taken advantage of by plea in abatement. See 1 Bishop on Criminal Procedure, Sec. 884; Gladden v. State, 13 Fla. 623; Reeves v. State, 29 Fla. 527, 10 So. R. 901.

In the Gladden case Chief Justice Randall, speaking for the Court, said: "However unimportant the discrepancy may seem to be, we consider that the appellant had a right to demand a strict compliance with the law in the drawing

and empaneling of a jury''. Citing Wharton's Am. Crim. Law, 3 Ed., 945 and 1041 and authorities cited.

Chapter 12068, Acts 1927, amending Sec. 2772, Rev. Gen. Stats., requires the county commissioners of the several counties in January of each year, or as soon thereafter as possible, to select and prepare a list of persons in the county qualified to serve as jurors, which list is to be signed and verified by the commissioners as containing the names of persons personally selected by them and possessing the prescribed qualifications. The list is required to be delivered to the clerk of the court and by him recorded in the minute book of the county commissioners.

The statute requires the clerk in the presence of the sheriff and county judge to write the names of the persons so selected on separate pieces of paper and fold or roll them so the names shall not be visible and deposit the same in the jury box. At every regular or special term of the circuit court the judge is required to draw from that box the names of thirty-six persons to serve as jurors at the next succeeding regular or special term of the court. That list of persons is kept by the clerk who fifteen days before a regular or special term of the court opens it in the presence of the county judge and makes a list of the names and delivers to the sheriff a venire commanding him to ''summons'' the persons so drawn as jurors to appear before the court at the next ensuing term. Upon the opening day of the term succeeding, or as soon as practicable, the judge is required to place the names of the thirty-six persons summoned, or so many of them as may appear in response to the summons, in a box and draw therefrom the names of eighteen persons who shall serve as grand jurors for the term. See Sec. 5, Chap. 12068 *supra*.

Broward County was until the year 1927 part of the Fifteenth Judicial Circuit when by Act of the Legislature,

Chapter 12433, Laws of Florida, it became the Twenty-second Judicial Circuit. The Act became effective thirty days after April 22, 1927. A special term of the court was held in July of that year at which the indictment against the defendant was presented.

The pleas filed and those tendered which were not allowed to be filed tend to show that the above enumerated requirements of the statutes were not observed either in the selection of names by the county commissioners, the summoning of the thirty-six persons to serve as jurors or the drawing of the names of eighteen from a box to serve as grand jurors; that the sheriff erased the name of one person included in the venire and substituted another; that after the so-called grand jury had finished its labors and was discharged by the court the sheriff reassembled them without authority of law; that they were not again sworn, impaneled or instructed by the court but proceeded in the presence of privately retained counsel for the State, who was not sworn as an assistant to the State's Attorney, and under his advice and direction indicted the defendant and presented that instrument to the court as the lawful finding of a duly organized and lawfully constituted grand jury of the County of Broward inquiring in and for the body of the county.

If the pleas were true C. N. Justice was an incompetent grand juror and his presence upon the grand jury vitiated the indictment. See Cotton v. State, 85 Fla. 197, 95 So. R. 668.

The substitution of his name in the venire by the Sheriff for another person was an unlawful act which destroyed the defendant's right under the Constitution to be tried upon an indictment by a grand jury.

The failure to place the names of the persons summoned by the sheriff, or those who appeared in response to the

summons, in a box from which the names of persons to serve as grand jurors at the special term and the failure to select the jury in such manner was a fatal irregularity and vitiated the proceedings which followed when timely objection was made.

In the case of Miller v. State, 42 Fla. 266, 28 So. R. 208, Mr. Justice Mabry, speaking for the court, said: "No case that we have found sanctions the right of private counsel to assume the sole and exclusive charge and management of a case before a grand jury, and not only remain with them during the examination of evidence and their deliberations thereon, but request and urge them to find a true bill. The secrecy of the grand jury secured by our statute and designed to preserve the freedom and independence of that body forbids such action, and it could not be tolerated by the courts without impairing the usefulness of the grand inquest".

In that case the plea in abatement did not exclude the inference that the private counsel who attended upon the grand jury had been procured by and with the consent of the court to assist the State's Attorney under the provisions of Section 1355, Rev. Gen. Stats. 1892, yet the plea was held to be good.

In the instant case the plea is clearer in that regard and negatives the idea that the privately retained counsel acted by and with the consent of the court.

The matter of summoning a grand jury at common law was a function performed by the sheriff and the manner of their selection was within his discretion. Without discussing the reason or necessity for a modification of that method, it is sufficient to say that the statute in this State materially changes the common law practice and, although the inherent power of courts in this State possessing criminal jurisdiction of felonies capital in character to summon

and impanel grand juries may remain, the law in this State as in most jurisdictions is that it is essential to the existence of a legal grand jury that there be a substantial compliance with the mode of selection prescribed by statute. See Woodward v. State, 33 Fla. 508, 15 So. R. 252; O'Byrnes v. State, 51 Ala. 25; Marsh v. People, 226 Ill. 464, 80 N. E. R. 1006; State v. Von Kutzleben. 136 Iowa 89, 113 N W. R. 484; State v. Clough, 49 Me. 573; Avirett v. State, 76 Md. 510, 25 Atl. R. 676; State v. Wetzel, 75 W. Va. 7, 83 S. E. R. 68; Young v. State, 63 Fla. 55, 58, So. R. 188.

In the case of Sharp v. United States, 138 Fed. R. 878, 71 C. C. A. 258, it was held that under a statute which commanded that "the names first drawn shall constitute the grand jury" the Court which contrary to the policy of the statute peremptorily excused and discharged from the array two qualified jurors in the order in which they were called and substituted others below them on the list "the names first drawn" did not enter into the constitution of the grand jury and therefore "the grand jury was not drawn and empaneled as provided by law" and was invalid.

While it may be lawful for the court after an order dismissing a grand jury, to reassemble it at the same term, and need not reimpanel it or cause the jurors to be resworn, see People v. McCauley, 256 Ill. 504, 100 N. E. R. 182, we have found no authority in support of the proposition that a grand jury after being duly discharged or dismissed by the court may upon its own initiative or the suggestion of the sheriff or privately retained counsel reassemble and continue a grand inquest for the county. We think that such an act is unlawful and an indictment found and presented under such circumstances is invalid.

The demurrer to the plea in abatement numbered three should not have been sustained and the additional pleas

in abatement tendered by the defendant should have been allowed to be filed.

· The judgment is therefore reversed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.

STRUM, J., absent on account of illness.