WILLIE GRAY v. STATE.
197 So. 333
En Banc
Opinion Filed July 2, 1940

*Edward McCarthy, Jr.,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—On July 28, 1939, Willie Gray, plaintiff in error, hereinafter referred to as defendant, was indicted by a grand jury of Duval County, Florida, for murder in the first degree for the unlawful killing of Ralph Wynn in Duval County on June 25, 1939. The defendant filed a plea in bar to a prosecution under the indictment on the part of the State of Florida, but with the approval of the trial court, withdrew the same and filed a plea in abatement raising the point that the grand jury of Duval County rendering the indictment against the defendant was not only summoned but was organized by the trial court in total disregard to Section 8214 C. G. L.

On September 1, 1939, the State of Florida filed a demurrer to the aforesaid plea in abatement, and after argument of counsel the trial court made and entered an order sustaining the demurrer of the State of Florida to the plea

in abatement filed by the defendant, and this ruling is assigned as error here.

The defendant was arraigned on the indictment, entered a plea of not guilty and was then placed upon trial before a jury, who heard the testimony of the respective parties, argument of counsel and charge of the trial court upon the law of the case and returned a verdict of murder in the first degree without recommendations to mercy. A motion for a new trial was presented by counsel for the defendant and the same was by the trial court overruled and denied. The court, upon motion of the State upon the verdict rendered, adjudged the defendant guilty of murder in the first degree and sentenced him to death by electrocution. From this judgment of conviction and the imposition of the death sentence an appeal has been perfected to this Court.

It is contended that the indictment charging the defendant with the crime of murder in the first degree is illegal and void because the lower court failed or omitted to file a written order with the Clerk of the Circuit Court of Duval County, Florida, as provided for in Section 8214, C. G. L., viz.:

"Grand Jury not Summoned Without Order in Certain Counties.—In counties wherein criminal courts of record are established no grand jury shall be summoned to attend any term of the circuit court, unless the circuit judge shall file with the Clerk a written order, directing a grand jury to be summoned."

Pertinent and material portions of the plea in abatement are, viz.:

"1. That pursuant to the requirements of Section 2777, R. G. S., 1920, as amended by Chapter 12,068, Laws of Florida, Acts of 1927, (the same being Section 4455, C. G. L. 1927), this Honorable Court in open court, at a regular term of said court, to-wit: the Fall Term of 1938, on the

20th day of April, A. D. 1939, did draw from the jury box the names of thirty-six persons to serve *as jurors* at the next succeeding regular term of said court, to-wit: the Spring Term, A. D. 1939, and did make a list in his own handwriting and deposit the same, together with the slips of paper drawn, in a securely sealed envelope, with his signatures written at least twice across the flap, which envelope then and there was delivered to the Clerk of the Court for safe keeping, all as required by the aforesaid statute and not otherwise; and such drawing was evidenced by the following entry in the minutes of said court, but not by any other entry, order or record whatsoever:

(Minute Book 73, page 42***)

"'IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT OF FLORIDA IN AND FOR DUVAL COUNTY.

" 'Thursday, April 20th, A. D. 1939.

" 'Court met this day as ordered at ten o'clock A. M. Honorable Miles W. Lewis, Judge, presiding; T. Murphy Brown, Deputy Clerk; Slocum Ball, Deputy Sheriff, Bailiff to the court.

" 'VENIRE FOR SPRING TERM 1939

" 'The Court here ordered the jury box brought into open court, and in the presence of H. R. Ford, Deputy Sheriff, and T. Murphy Brown, Deputy Trial Clerk of this court, drew therefrom the names of thirty-six (36) persons to serve as jurors at the spring term, A. D. 1939, of this court, and transcribed in his own handwriting their names on a list and placed the slips containing the names, together with said list in an envelope securely sealed and wrote his name as Judge of this court three times across the flap thereof in accordance with the law and delivered the said envelope to said T. Murphy Brown, Trial Deputy Clerk of this court, for safe keeping.' * * *

"The minutes of the term were signed as of Saturday, May 13th, A. D. 1939, by the Honorable Bayard B. Shields, Circuit Judge.

"And no other minute, minutes, entry, order or record of said Court is or ever was made or in existence authorizing, directing, requiring or evidencing the drawing of said 36 names or any of them or the summoning of said 36 persons or any of them to serve as jurors or as grand jurors at or for the said Spring Term, A. D. 1939, of said court or any other term of said court at or during any period of time since the alleged homicide June 25th, 1939.

"2. Thereupon, and at least fifteen days before the opening of the next term of said court, to-wit, the Spring Term, A. D. 1939, that is to say, on the 20th day of April, A. D. 1939, the Clerk of said court opened the aforesaid envelope in the presence of the County Judge of Duval County, Florida, and made a list of the aforesaid thirty-six names, and did then and there on the said 30th day of April A. D. 1939, issue and deliver to the sheriff a venire with seal of said court, commanding him the said sheriff to summon *as Grand Jurors* the persons drawn in the manner hereinabove alleged, to appear before the said court at the next ensuing term thereof, to-wit: at 10 o'clock A. M., Monday, May 15th, A. D. 1939, which said venire was in the words and figures following:

"(Copy of Venire Issued by Clerk)

"The State of Florida to Sheriff of Duval County, Florida, Greeting:

" 'You are hereby commanded to summon the following named good and lawful men who have been regularly drawn to be and appear before the Judge of the Circuit Court at the Court House in Jacksonville, Florida, at ten o'clock A. M. on Monday, the 15th day of May, A. D. 1939, to

serve as grand jurors at this the spring term, A. D. 1939, of said court, to-wit:

" '(Here follow the list of thirty-six names.)

" 'WITNESSES:

" 'Elliot W. Butts, Clerk of our said court, and the seal thereof at the Court House in Jacksonville, Florida, this 20th day of April, A. D. 1939.'

"Elliot W. Butts, Clerk Circuit Court,
Duval County, Florida.

"(SEAL)  "By: T. Murphy Brown, Deputy Clerk.

"3. On the 15th day of May, A. D. 1939, the aforesaid venire was returned, and the following proceedings were had in open court as shown by the minutes thereof:

"(Minute Book 73, page 66)

" 'IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT OF FLORIDA IN
AND FOR DUVAL COUNTY.

" 'Monday, May 15th, A. D. 1939.

" 'This being the day provided for the holding of the spring term of the Circuit Court of the Fourth Judicial Circuit of the State of Florida, in and for Duval County, the said court met at ten o'clock A. M., Honorable Miles W. Lewis, presiding; T. Murphy Brown, Chief Trial Clerk of said court, and Slocum Ball, Deputy Clerk, Bailiff to the court.

" 'SHERIFF'S RETURN A VENIRE

" 'The Sheriff made return of the venire heretofore issued for thirty-six (36) good and lawful men commanding him to summons the thirty-six (36) good and lawful men to be and appear before this court this day at 10 o'clock A. M. to serve as jurors; thirty (30) were served and answered to their names, and for reasons satisfactory to the court eight (8) were excused.

" 'Thereupon the remaining twenty-two (22) names were placed in a box and the Judge of this court drew from the said box the following eighteen (18) names, to-wit: (Here follow the names of eighteen [18] talesmen) and the eighteen (18) talesmen whose names were so drawn from the box by the Judge of this court are the grand jury to serve at this the spring term, A. D. 1939.

" 'WHEREUPON the said grand jury was duly empaneled and sworn according to law.' * * *

"4. The indictment herein against the defendant for murder in the first degree was found to be a true bill on the 28th day of July, A. D. 1939, at and during the regular Spring A. D. 1939 term of said court, by the aforesaid alleged grand jury which was drawn, impaneled and sworn in the manner hereinabove set forth, and not otherwise; and the said indictment was not and has not been presented to or considered by any other grand jury whatsoever, or any body, group or panel claiming or assuming to act as a grand jury; and the said alleged grand jury is the only grand jury which was ever drawn or impaneled or sworn, or which ever attended or convened, or which ever was summoned or required to attend or convene at the said Spring, A. D. 1939, term of said court, or at any other term or time whatsoever since the said indictment was drawn or reduced to writing, or since the alleged homicide on June 25th, 1939, during said Spring Term.

"5. And although a criminal court of record is and ever since the year 1887 has been established in Duval County, yet, notwithstanding the provisions of Section 5948, R. G. S. 1920 (8214 C. G. L.), and without regard for the requirements of that statute, the aforesaid alleged grand jury was summoned prior to and without the making or filing by any Judge of said Circuit Court with the Clerk of said court, or elsewhere or otherwise, of any written order

directing a grand jury to be.summoned to attend the said term of said court, or to attend said court at any other term or time singe the alleged homicide; and no written order made, issued, rendered, entered or filed by the said Circuit Judge with the Clerk of said court or with any one else or elsewhere or otherwise, was ever made, issued, rendered, entered or filed directing the said grand jury to be summoned or directing any other grand jury to be summoned to attend the Spring Term, A. D. 1939, of said court or any special term of said court held or to be held at any time since the alleged homicide.

And so it is, and the defendant avers, that the aforesaid indictment was not presented to or found to be a true bill any grand jury summoned pursuant to the requirements of the statutes of Florida and particularly said Section 5948 R. G. S. (1920)."

The plea in abatement raises the question of the legal sufficiency of the indictment against the defendant being presented in open court by a grand jury of Duval County which had been summoned, without a written order, first made and filed with the clerk of the circuit court as provided by Section 8214, *supra*. There was at the time a lawfully established criminal court of record in said County of Duval. Counsel for defendant cites Taylor v. State, 117 Fla. 706, 158 So. 437, 440; Hicks v. State, 97 Fla. 199, 120 So. 330; Woodward v. State, 33 Fla. 508, 15 So. 252; Gladden v. State, 12 Fla. 562. We have carefully examined each of these cases. It is admitted on the record that no order in writing by the circuit judge was made and entered or delivered to the clerk as contemplated by Section 8214. The lower court did not direct the clerk of the court to summon the grand jury, but the details of summoning said grand jury were personally under the control and supervision of the lower court, who, in obtaining the grand jury,

proceeded under Section 4455, C. G. L. The plea failed to challenge the regularity of obtaining the grand jury by the lower court under Section 4455 or to present an issue that the grand jury was not summoned or obtained thereunder.

It affirmatively appears by the plea that the lower court on April 20, 1939, caused the jury box to be produced in open court and the court drew therefrom the names of 36 persons to serve as jurors at the Spring Term, 1939.; the court placed the names on slips, in his own handwriting, and placed them in an envelope and the same were opened and the 36 lawfully summoned and the grand jury obtained. The plea does not make it appear that the defendant was deprived of authority or constitutional rights because the lower court failed to make and deliver to the clerk the written order provided for by Section 8214, or that the grand jury presenting the indictment was summoned and impaneled in an irregular or unlawful manner. In the case of Woodward v. State, 33 Fla. 508, 15 So. 252, this Court held that Section 8214 was directory as contra-distinguished from mandatory. Such a statute is said to be directory when a departure from the usual method does not in the absence of fraud or prejudice militate against the statutory or constitutional rights or the interests of the party challenging the regularity of the selection of said grand jury. A mandatory statute in the summoning and selecting of a grand jury is one required to be observed in order to prevent fraud, unjust prosecutions or an invasion of the statutory or constitutional rights of citizens. See 24 Am. Jur., par. 19, page 845. The plea asserted that the indictment was illegal and void because the trial court failed to file a written order with the Clerk, but personally proceeded to obtain the names of 36 jurors from the jury box and after selecting said names, directed that the named persons be summoned

to court for jury duty. It has not been shown that fraud or unjust prosecution have arisen from the failure of the trial court to make the order under the statute. It has been held that the statute here was enacted to save expenses of a grand jury in counties where criminal courts of record existed. See Woodward v. State, *supra*.

It should not be overlooked that Sec. 8214, C. G. L. 1927, was enacted in the year 1891 and that in 1934 the people adopted an amendment to Section 10 of the Declaration of Rights of the Constitution wherein, among other provisions, is the one: "The judge of any circuit court is authorized to dispense with the summoning, impaneling, and convening of the grand jury at any term of court by making, entering, and filing with the clerk of said court a written order directing that no grand jury be summoned at such term of court, which order of the circuit court may be made in vacation or term time of said court."

The statute contemplated a positive act on the part of the circuit judge to draw a grand jury in counties where criminal courts of record were established while the amendment required a definite order to dispense with the grand jury in any county.

The latter prevails and is additional reason for the view that the judge acted properly.

The record shows that one of the jurors during the progress of the trial had a heart attack at the supper table and the bailiff was forced to leave the remaining jurors and take the sick juror to his room and call a physician. The juror was treated by the physician and on the following day the entire panel appeared in court. The separation of the jury was brought to the trial court's attention and a careful and thorough investigation was made and witnesses examined, and the court made and entered an order holding that the separation of the jury was not error. Counsel for

defendant contends that the separation was error and cites Smith v. State, 40 Fla. 203, 23 So. 854; Gamble v. State, 44 Fla. 429, 33 So. 471. We have examined these authorities but failed to find merit in this assignment.

One of the instructions of the lower court to the jury was, viz.: "Should you find the defendant guilty of murder in the first degree as charged in the indictment, a majority of your number may in your verdict recommend him to mercy, which recommendation will have the effect of reducing the penalty of his offense from death to imprisonment for life; but any verdict as to his guilt or innocence must be concurred in by each of you. In such event, to the form of your verdict, as hereinbefore instructed, just prior to the words, 'So say we all,' you add the words, 'And recommend him to the mercy of the court.'"

The jury returned into court, after being directed by the trial court to retire and consider their verdict, and requested further instructions and the following occurred:

"A JUROR: Your Honor—.

"THE COURT: —or just the form of verdict?

"A JUROR: Your Honor, my understanding was that our verdict should read whatever the charge we agreed upon, 'so say we all.' Now, should there be recommendations, would they have to be 'so say we all'?

"THE COURT: Just recite the words 'so say we all.' Just before the words 'so say we all,' you add 'and recommend him to the mercy of the court.'

"A JUROR: That would be our unanimous verdict, that we recommended mercy, 'so say we all'?

"THE COURT: I will read you the forms of verdict again, gentlemen.

"Now, under the indictment in this case the defendant may, if the evidence warrants it, be convicted either of

murder in the first degree, murder in the second degree or manslaughter or be acquitted.

"If you convict him of an unlawful homicide you must say in your verdict of what degree of homicide you convict him; that is to say, if you convict him of murder in the first degree you say in your verdict, 'we the jury find the defendant guilty of murder in the first degree, so say we all.' If of murder in the second degree you say, 'We, the jury, find the defendant guilty of murder in the second degree, so say we all.' If of manslaughter you say, 'we, the jury, find the defendant guilty of manslaughter, so say we all.' If you acquit the defendant you say 'we, the jury, find the defendant not guilty, so say we all.' And in each instance the verdict is to be signed by one of your number as foreman and dated at Jacksonville, Florida.

"Should you find the defendant guilty of murder in the first degree as charged in the indictment, a majority of your number may, in your verdict, recommend him to mercy, which recommendation will have the effect of reducing the penalty of his offense from death to imprisonment for life, but any verdict as to his guilt or innocence must be concurred in by each of you. In such event, to the form of your verdict as hereinbefore instructed and just prior to the words 'so say we all,' you add the words 'and recommend him to the mercy of the court.'

"Does that answer your question, gentlemen?

"A JUROR: Yes, sir."

It is contended that these instructions are confusing and misleading and a doubt existed in the mind of the jury as to their duty thereunder, and the case of Blocker v. State, 87 Fla. 128, 99 So. 250, is cited. It cannot be said on this record that the jury did not comprehend its duty under the charges here assigned as error. The trial court simply read

again in the presence of the jury the instructions previously given. We fail to see merit in this assignment.

The instruction was correct and the attack upon it is without avail.

Only one verdict is rendered. On the matter of guilt it must be unanimous. That part of it referring to mercy is but a recommendation, though binding on the court in cases of murder in the first degree. When the words "so say we all" follow the recommendation, as is their proper place, the verdict means that all jurors agree upon the guilt of the accused and all of them agree, and report, that a majority of them favor the recommendation and resultant life sentence.

It is next contended that the verdict is against the weight of the evidence. The parties here involved are colored people. The deceased and his cousin, Nelson, met the defendant on a street late at night in a colored section of the City of Jacksonville. The deceased and Nelson had heated words with the defendant and the defendant left the scene in an angry mood, riding in an automobile of a friend, who testified that he drove him to a certain place and the defendant left the car and was gone for about five minutes and returned and was driven to the scene where the homicide occurred. The defendant went to the home of Nelson where deceased was visiting and the former trouble was renewed. The State witnesses testified that the defendant shot the deceased without provocation, while some of the witnesses for the defendant testified that the deceased had a knife and was trying to cut the defendant when he fired the fatal shots. There was a dispute or conflict in the evidence which the jury had to settle under appropriate instructions. We think there is ample testimony to sustain the verdict of the jury.

We have considered grounds 8, 9, 10 and 11 of the motion for a new trial. These assignments are the basis for questions 5 and 6 presented and argued in the brief of counsel for defendant. These questions do not affect the merits of the case. If error exists in connection therewith, it is at the most harmless error. See 4499 C. G. L.

The case at bar has been carefully considered. The record has been studied, briefs read and authorities cited examined, and the case was ably argued at the bar of this Court, when each pertinent and material phase was called to the attention of the Court. We fail to find error in the record.

The judgment appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD, BUFORD and THOMAS, J. J., concur.

BROWN, J. dissents in part.

BROWN, J. (dissenting in part).—On one of the points raised in this case and discussed in the majority opinion, I must, with some degree of diffidence, dissent. I refer to the matter of the form of the jury's verdict in the event a majority of the jury were in favor of recommending the defendant to the mercy of the court. Undoubtedy, the form of the verdict, in these circumstances, as embraced in the court's instructions, would be proper and perfectly clear and understandable where all the members of the jury were of the opinion that mercy should be recommended. The statute, Section 8401, C. G. L., says that "Whoever is convicted of a capital offense and recommended to the mercy of the court by a majority of the jury in their verdict, shall be sentenced to imprisonment for life," etc.

But where the jury is unanimously in favor of convicting a defendant of a capital offense, and only a majority of the members of the jury are in favor of recommending the defendant to the mercy of the court, it seems to me that it tends to confuse the jury to instruct them in such a case

to place the words "So say we all" after the words "and recommend him to the mercy of the court." I am inclined to think that such instruction as to the form of the verdict would tend to make the jury believe that all of them must concur in the recommendation to the court in order to embrace such recommendation in their verdict. And unless such recommendation is embraced in or made a part of their verdict, the statute on that subject would not be complied with.

The charge of the learned trial judge, as quoted from in the majority opinion is, I think, a customary charge as usually given by the circuit courts of our State, and which in this particular has never been questioned before that I can recall, And I must confess that it is difficult to charge the jury on this subject in any other manner than that adopted by the trial judge in this case and at the same time comply with Section 8401, *supra*. But in this case it appears from the questions asked the court by one of the jurors, after they had been returned into court and requested further instructions, that the jury in this case was confused as to whether the entire jury, or merely a majority, could recommend the defendant to the mercy of the court in case they found him guilty of murder in the first degree.

It is of course very important that the jury should not be confused on this point. For that reason I think the words "and recommend him to the mercy of the court" should come after the words "so say we all." Indeed, it might be well to instruct the jury that if they should from the evidence find the defendant guilty of murder in the first degree, and a majority of the jury should wish to recommend him to the mercy of the court, they could add the words at the end of the verdict "and the majority of the jury recommend him to the mercy of the court." In such a case the complete verdict would read as follows: "We the jury find the de-

fendant guilty of murder in the first degree; so say we all; and a majority of the jury recommend him to the mercy of the court." And the jury might be further instructed if they should find the defendant guilty of murder in the first degree and all of the members of the jury desire to recommend the defendant to the mercy of the court, they might use the form of verdict instructed in this case, to-wit: "We the jury find the defendant guilty of murder in the first degree and recommend him to the mercy of the court. So say we all." Whether my suggestion as to the exact form of the verdict is correct or not, it seems to me that some form of verdict in a case of this kind should be adopted which could not tend in the slightest to confuse the jury in respect to this very important matter. It seems quite plain to me that in this case, this particular jury was confused by the court's instructions on this subject and for that reason I think the judgment should be reversed.