CHARLIE GUNN, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed December 13, 1919.

1. "Where the taking is open in the presence of others, not amounting to a robbery, and there is no concealment, or in short, where the testimony as to the taking standing alone raises a presumption of fact in favor of an innocent taking, and there is nothing in it from which a jury may legitimately infer a felonious purpose, then a verdict against the accused cannot be sustained, and it would be the duty of the court to set it aside." Long v. State, 44 Fla. 134, 32 South. Rep. 870.

2 Where there is no testimony to show a felonious taking by the defendant, it is error for the court to charge the jury that they could infer a felonious intent from the recent exclusive possession of the property alleged to have been stolen

3. Where there is conflict in the evidence as to the intent with which the property was taken, or it is of such a character as to legitimately authorize an inference of a felonious purpose, then the matter should be submitted to the jury without any intimation from the trial court as to the force of presumptions of fact arising from any portion of the testimony.

4.  Where an error is fundamental, this court will consider it without an assignment based upon it.

5.  Where testimony is improperly admitted over the defendant's objection, this court will accept it as having been tendered by the State and admitted by the court for the purpose of establishing some fact tending to prove the prisoner's guilt, or as having a tendency to influence the jury in reaching a conclusion of the prisoner's guilt, and where such testimony goes to the jury with the sanction of the court and a conviction is obtained, this court cannot look into the minds of the jury and determine to what extent such testimony induced the verdict, nor can we say that it had no effect and was harmless.

A Writ of Error to the Circuit Court for Santa Rosa County; A. G. Campbell, Judge.

Judgment reversed.

*W. W. Clark,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

BROWNE, C. J.—The plaintiff in error was convicted in the Circuit Court of Santa Rosa County of the larceny "of one brass rudder, one brass propeller and one brass shaft."

The testimony shows that these articles, together with the engine of the boat "President," were taken from her by some unknown persons. The defendant in company with two other boys found the articles named in the indictment in a marsh on an island near Bagdad, in the latter part of September or first of October, and carried them to his home in Bagdad, and put them on the

porch where they remained until some time in January, when he carried them with some junk belonging to his father, to Pensacola and sold them. The engine in four parts, was found in a marsh bog by Mr. Holst, the custodian of the "President." The boys were on the island looking for drift stuff when they found the alleged stolen property. Gunn carried it to his home in the day time, and it was shown and offered for sale to several persons by his father. It lay for over two months on the back gallery of his home, and as testified to by Charley Huggins, it was "open, exposed, nothing about them covered up—open for any person, who would be passing, to see them without they shut their eyes." The boat to which these articles belonged was in the care of Mr. Holts and Charley Huggins, and the latter saw them on the back porch of the defendant's home, but never recognized them as belonging to the boat he had in charge.

They were seen by several persons, and could have been seen by any one passing the house. They were carried by Gunn from Bagdad to Pensacola unconcealed on a boat running between those points, and were seen and examined by the engineer of the boat. Gunn sold them to the Gulf Machine Shop and took a check in his own name in payment. While the boys were at the island and had the articles in their boat, or were engaged in putting them on, another man came up to them in his boat, talked with them and saw the articles.

There was no concealment of the stuff on the part of the boys.

"Where the taking is open in the presence of others, not amounting to a robbery, and there is no concealment, or, in short, where the testimony as to the taking standing alone raises a presumption of fact in favor of an innocent

taking, and there is nothing in it from which a jury may legitimately infer a felonious purpose, then a verdict against the accused cannot be sustained, and it would be the duty of the court to set it aside." Long v. State, 44 Fla. p. 134.

Several of the assignments of error are predicated upon the refusal of the trial judge to charge the jury on the presumption in favor of an innocent taking, where it is open in the presence of others, not amounting to robbery, and there is no concealment. This court, however, has said that this "principle is not one of law, but of fact arising from the evidence," and is not one "which accused has a right to have charged in his favor."

Just how jurors are to know that they may consider the circumstances of an open taking, in the presence of others, and there is no concealment as raising a presumption of fact in favor of an innocent taking, in the absence of a charge telling them they may do so, this court has never decided.

The court charged the jury that the "exclusive possession of goods recently stolen" is a circumstance from which "the jury may infer from that fact that that person stole the goods unless that person directly gives a reasonable and credible account of how he came in possession of the goods."

There was absolutely no testimony to show a felonious intent on the part of the defendant, yet the court charged the jury that they could infer such intent from the recent exclusive posession of the goods by the defendant.

Two conflicting presumptions arose from the facts proven in this case: the presumption of guilty intent from the recent exclusive possession of the property, and the presumption of an innocent taking where there was no

concealment, and where the taking was open in the presence of others, under circumstances not amounting to robbery. The court charged on the presumption of a guilty intent, but refused to charge on the presumption of an innocent intent. In the Long case, *supra,* this court said "Where there is conflict in the evidence as to the intent with which the property was taken, or it is of such a character as to legitimately authorize an inference of a felonious purpose, then the matter should be submitted to the jury without any intimation from the trial court as to the force of presumptions of fact arising from any portion of the testimony." The trial court, in violation of that rule, charged the jury on "the force of presumptions of facts" arising from a portion of the testimony. This was peculiarly prejudicial to the defendant, as there was no testimony showing a guilty intent, and the jury could only arrive at what the intent of the defendant was, by one or the other of the presumptions that could have been drawn from the evidence. To charge that they might infer guilt from one set of circumstances, and refuse to charge as to the circumstances from which an innocent intent might be presumed, was harmful error.

While there is no assignment of error based upon the charge as to the presumption of guilt from recent exclusive possession, still in view of the testimony, we think the error in this charge was fundamental and the court can consider it without an assignment based upon it.

It is assigned as error that the court permitted Sheriff Harvell over the objection of the defendant to testify from hearsay as to the movements of the defendant, several months after the property was taken. The only purpose

of this testimony was to raise in the minds of the jury a presumption of the guilt of the defendant by his flight.

This witness testified to the movements of the defendant about the latter part of January or February, but was unable to say whether he left Bagdad before or after a warrant had been issued for him, but merely that he got information that he had left Bagdad, and in reply to the question what investigation was made, he said it was impossible to say "except by hearsay," and his testimony was all given with the explanation that it was "what he understood," and "of course this is all hearsay."

The defendant freely told of his movements from the time he found the goods, until he was arrested, and there is nothing to show flight on the part of the defendant, and the admission of the Sheriff's testimony for this purpose was harmful error.

It is contended that as the prisoner had already testified that he had made trips away from his home, that no harm could have been done him by the admission of the Sheriff's testimony. Then why was it offered by the State, and admitted by the Court? Surely not merely to consume time, and swell the record? The State's attorney must have believed that the Sheriff's testimony would tend to establish the guilt of the prisoner, and the court in admitting it considered it competent for that purpose. Having gotten it before the jury over the objection of the defendant, and a conviction obtained, the State cannot be heard to say it was harmless error. Who can say that the testimony that the court on the offer of the State's Attorney over the objection of the defendant, permitted to go to the jury for consideration in determining the guilt of the defendant,

did not and could not have the effect that the State's Attorney intended?

The judgment is reversed.

Taylor, Whitfield, Ellis and West, J. J., concur.