### JACK RILEY CUSTER v. STATE OF FLORIDA

34 So. (2nd) 100                    June Term, 1947
July 15, 1947                              En Banc
On rehearing February 13, 1948

*Whitaker Brothers* and *Roach & Hoyle,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, for appellee.

PER CURIAM:

No error appearing, the judgment is affirmed.

THOMAS, C. J., CHAPMAN and ADAMS, JJ., and KANNER, Associate Justice Concur.

TERRELL and BUFORD, J. J., and WILLIAMS, Associate Justice, dissent.

BUFORD, J:, dissenting:

I am unable to concur in the proposed judgment of affirmance because I am convinced that at least two errors are shown by the record which require reversal.

My very fixed view is that in reviewing judgments of conviction of crime to determine whether or not a lawful conviction has been had we should not allow ourselves to be influenced by the heinousness of the alleged crime, by the applicable punishment or by the creed, nationality or color of the accused.

This is true because every man is, before the law, presumed to be innocent until he has been tried in a court of competent jurisdiction where he has pleaded guilty or has been found guilty by a jury which has been *lawfully* selected, drawn, empaneled and sworn to try the issues.

I apprehend that there is no one thing more vital to the freedom of the people or to the protection of life, liberty and property than is the integrity of the jury box. When the question of the integrity and validity of the jury box is presented, then that question should be first settled without any consideration of the question of the guilt or innocence of the accused because the issue of his guilt may only be determined by a lawful jury. If the jury panel be challenged because of the illegality, no court may go further without first adjudicating the issue of legality. If the jury is found to be illegal, then the court can no more function legally with that illegal jury than it could legally accept the verdict of a vigilance committee organized on the street.

The selection of a jury list, recording the same, and placing the names of the persons so selected in the jury box and then keeping the names so placed in that box secure and inviolate, except when drawn one at a time by the judge, or by

his order, for jury duty, are not merely clerical acts; they are mandatory official acts done and exercised as attributes of sovereignty in safeguarding liberty and property.

On May 31st 1946, indictment was returned in the Circuit Court of the Fifteenth Judicial Circuit Court in and for Broward County, Florida, charging Jack Riley Custer with the crime of rape.

On June 5th 1946 the defendant was arraigned and pleaded not guilty. On July 9th 1946 defendant filed his motion to be allowed to withdraw his plea of not guilty and file what he termed a plea in abatement and challenge to the array of jurors summoned and brought into court to try the issues in this case. With this motion defendant tendered his so-called plea in abatement and challenge to the array of jurors. The document filed is properly a challenge to the array and not a plea in abatement. This is material because a plea in abatement goes to the validity of the indictment and therefore, must be entered prior to a plea in bar, unless the court in the exercise of its discretion, allows a plea in bar to be withdrawn and a plea in abatement to be filed. A challenge to the array may be interposed at any time prior to the empaneling of the jury and only goes to challenge the venire which has been summoned to try the cause.

In the challenge to the array it was shown by sufficient and definite allegations that a jury list was duly made up by the Board of County Commissioners of Broward County, Florida, on the 2nd day of January, 1946; that said list was forthwith delivered to the Clerk of the Circuit Court of said County and by him duly recorded in Minute Book of the Board of County Commissioners; that on the 22nd day of January, 1946, the Clerk did write the names of the persons appearing on said jury list on separate pieces of paper and did fold each piece of paper so that the names written thereon were not visible and did deposit such pieces of paper in a jury box so constructed that it could be tightly closed and that the said box was securely locked and across the opening thereof was placed a label or seal containing the signature of the Clerk and the date of the closing of said box, which said box was kept in his custody and the key to said box was delivered to the Sheriff

of the County; that on the same date, January 22, 1946, the County Judge of said County, Boyd H. Anderson, did make a certificate, as follows:

"I, Boyd H. Anderson, County Judge of Broward County, Florida, do hereby certify that the Clerk of the Circuit Court in the presence of myself and Walter R. Clark, Sheriff, did write the names of person contained in the jury list as selected by the Board of County Commissioners of Broward County, on the 2nd day of January A. D. 1946, on separate pieces of paper, and did fold such pieces of paper so that the names written thereon were not visible and did deposit such pieces of paper in a box so constructed that it could be tightly locked, and said box was securely locked and across the opening thereof was placed a label or seal containing the signature of the said Tex Cabot, and the date of the closing of said box."

That a like certificate was made on the same day by Walter R. Clark as Sheriff of said County. That then and thereby the said jury list of jurors for the said county and the jury box containing the names of the jurors on such jury list was established for Broward County for the year 1946; that on June 17, 1946 Circuit Judge George W. Tedder, apprehending and believing that said jury list and the said jury box in the said county was about to be depleted of names of jurors, issued an order as Judge of said Circuit Court, directing selection of an additional jury list as follows:

"It appearing to the Court that the list of jurors prepared by the Board of County Commissioners of Broward County, Florida, in accordance with law, in January 1946, will soon become exhausted and that additional jurors will be necessary for the trial of causes by a jury, therefore,

"IT IS CONSIDERED ORDERED AND ADJUDGED that the County Commissioners of Broward County, Florida, at their next regular meeting, select in accordance with law and make out a list of not less than two hundred fifty (250) nor more than five hundred (500) persons properly qualified to serve as jurors in said county; said list to be signed and verified by said Commissioners as provided by law."

That on June 25, 1946, the County Commissioners of Broward County or a majority of them, met and selected the

names of 483 additional jurors to be added to the jury list and with which to replenish the said names of jurors and did make and file their certificate of their doings in this regard as required by law.

That the said list so made by the County Commissioners on said 25th day of June, 1946, was turned over to the Clerk of the Circuit Court and by him recorded in the Minute Book of the County Commissioners of said County and thereafter, on the 25th day of June 1946, Ted Cabot as Clerk of the Circuit Court of Broward County by his Deputy Clerk, Zenda Alexander, made and filed the certificate showing the foregoing action and certifying that he did, in the presence of the County Judge and Sheriff, write the names of the persons contained on said list on separate pieces of paper and did fold said pieces of paper so that the names written thereon were not visible and did deposit such pieces of paper in a box so constructed that it could be tightly closed and that said box was securely locked and across the opening thereof he placed a label or seal containing the signature of the Clerk and the date of closing of the box, and that the box was kept in his custody and the key to the box was delivered to the Sheriff of Broward County. This certificate was supported by like certificates made by Boyd H. Anderson, County Judge, and by Walter R. Clark, as Sheriff.

It is further averred that the jury box containing list of persons selected for jury duty in the said County referred to in the certificates on June 25, 1946, is one and the same box referred to as selected and established in January, 1946.

It is then alleged that the names in said jury box of persons selected for jury duty in January, 1946, had not been exhausted and that it contained the names and list of persons qualified to serve as jurors on June 25, 1946 of some 40 to 45 persons theretofore selected and the names of more persons that were drawn and selected on the 29th day of June, 1946, to serve on the present panel of jurors and summonsed and now appearing in court to try the case. "That the names of the forty to forty-five jurors qualified to serve as jurors and contained in the jury box on the 25th day of June, 1946, were taken and removed from said box and demolished and de-

stroyed prior to the placing (in the jury box) of the additional names of persons for jury duty of some 483 persons, names and list of names on said last named date; that the destruction and removal of said names from said jury box as aforesaid was wrongful and illegal and voided and fouled said box, contrary to all law. That placing the new and additional names of some four hundred and eighty three names of persons selected and qualified to serve as jurors in said county in said box after it had been emptied, created and established an illegal and void box of (names of) persons selected and qualified to act as jurors in said county contrary to all law. That at the time of the selection and summonsing of jurors to serve as jurors on this panel in this court on the 29th day of June, A. D., 1946, the box and names of persons selected to serve and qualify as jurors in said county, there was not a legally established and existing box from which to draw and select names of persons qualified to serve and acting as jurors on this panel, and says that the whole panel selected and chose to serve in this court on this case is illegal and void, and that said panel does not contain the names of persons legally qualified to serve and act in this case, and the whole panel should be vacated and set aside. That the said box as aforesaid is now fouled and does not contain the names of persons qualified to be drawn therefrom and act as jurors in this court in this case, and that the panel drawn and selected to act as jurors on the 29th day of June A. D. 1946, is illegal and void and is not a duly constituted panel of jurors under said Chapter 40 of the Compiled General Statutes of Florida, 1941, to try this defendant." Wherefore, defendant challenges the panel of jurors and prays that the panel be quashed.

The matter came on for hearing on July 9th, 1946, whereupon the court, after hearing argument, entered an order denying the plea in abatement and challenge to the array. This was error.

In the case of Taylor v. State, 117 Fla. 706, 158 So. 437, the court had under consideration a plea in abatement which plea alleged in effect that the indictment was voidable because the County Commissioners wilfully and fraudulently failed to select the required number of persons qualified for jury ser-

vice. It was alleged that the County Commissioners were required to select the names of not less than 250 persons properly qualified to serve as jurors but that they selected a list of names of only 156 persons and that each of the County Commissioners had made an affidavit when the jury list was made up that they were not able to select the number of persons to serve as jurors as required by law who were qualified under the law. Motion to strike the plea was granted. We held that the plea presented a definite issue with the degree of certainty required in such plea and held "it was error to strike the plea in abatement, which error we hold to be of a substantial nature impairing a constitutional right secured to the accused." It is elementary that a constitutional right may be waived but if it is not waived then the defendant, if he timely asserts the right, must be protected in it. This court has recognized this constitutional right to be vested in defendants since the handing down of the opinion in Gladden v. State, 13 Fla. 623, where Mr. Justice Randall, speaking for the Court said:

"Irregularities, however slight, when they show a departure from the provisions of law in respect to the selection, summoning, and empaneling of jurors, are proper grounds of objection to the jury, and from grounds of challenge to the array. Whartons Am. Crim. Law, 3d ed., 945, and 1,041, and authorities cited."

In Lake v. State, 100 Fla. 367, 129 So. 834, we said:

"In the case at bar the plea in abatement embraces eleven grounds or pleas, all of which are directed to alleged illegalities and irregularities in drawing the jury list and in selecting the grand jury as required by Section 2772 Rev. Gen. Stats. of 1920, (Section 4444 Comp. Gen. Laws of the 1927) and Section 2776 Rev. Gen. Stats. of 1920 (Section 4452 Comp. Gen. Laws of 1927). We have examined the basis for the predication of each of the said pleas and there appears to have been little or no attempt at a compliance with the law in the matter of selecting, drawing, recording and approving the jury list as drawn in January, 1927, from which the grand jury was drawn that initiated the indictment in question. The statute as above cited in clear and definite terms points out

the duty of county officers in the matter of selecting, qualifying, approving, transcribing and preserving jury list and failure to comply accurately or substantially with these requirements will validate any jury or grand jury drawn therefrom when objection is seasonably taken there to."

In the case of Slayton v. State, 105 Fla. 586, 141 Sou. 875, we said:

"When the County Commissioners proceeding to act under the Order of Court above mentioned, instead of placing the names of 500 male persons in the jury box placed 969 names therein they thereby fouled the jury box so that no valid jury could be drawn therefrom."

And again there we said:

"Section 3 of the same Act, section 4450 C.G.L. provides as follows:

'This law shall not in any manner affect the provisions of any existing law relative to qualifications of jurors or to the selection of jury lists, but the same shall be held to provide for the making up of jury lists under orders of the circuit judge from time to time as said circuit judge may be advised is necessary to avoid the jury box becoming exhausted.'

"The latter clause of the last quoted section, to-wit:

'But the same shall be held to provide for the making up of jury lists under orders of the circuit judge from time to time as said circuit judge may be advised is necessary to avoid the jury box becoming exhausted,' must be held to mean that the circuit judge is vested with full authority to determine when it may be necessary to avoid the jury box becoming exhausted and there is no discretion left in the Board of County Commissioners to place any names in the jury box, after the names have been placed therein as provided by section 4444 C.G.L., in January of each year, except under and in conformity with the orders of the Circuit Judge. It follows, therefore, that the jury box from which the grand jury was drawn which returned the indictment in this case contained 469 names which were illegally placed in said box and therefore any jury drawn from the names in the box could not constitute a legal jury and an indictment found and returned by such illegal jury is illegal and voidable. See Lake v. State, supra. Inasmuch as

the question is raised and presented, we may say in this connection that we construe the statutes in this regard to mean that when the list of names in a jury box is about to become exhausted the Circuit Judge may order such additional names as he deems needful to be placed in the box and these names shall be placed in the box with the other names remaining there. *The law only contemplates that the box should be emptied of all names when the new list for the succeeding year is put into the box in January. See Lake v. State, supra."* (Emphasis supplied).

In Livingston v. State, 108 Fla. 193, 145 So. 761, we said:

"The 11th and 12th grounds of the motion for a new trial are the Court erred in overruling defendant's motions to quash the panel of jurors respectively.

"The first ground of both motions are the same and read as follows:

" 'That the venire was not drawn from a due and legally constituted jury box, in that on the 24th day of November, A. D. 1931, upon the jury box being brought into court for the purpose of the Court drawing a venire to serve during the last week of the regular term of court, the Court withdrew all names from the jury box and placed them upon his desk in front of him and after apparently engaging in the separation of the slips of paper that were stuck together, stirred the same upon the top of his desk and then apparently replaced them back into the jury box, after which he proceeded to draw a venire and from which said jury box, after all the names had been taken therefrom and replaced as aforesaid, the venire drawn and issued for the next regular or special term of court and for the trial of this defendant, by reason of which said jury box made up and existing under the provisions and purview of the Statute in such cases made and provided.' "

"The Order of the Court in overruling this motion recites:

" 'On this ground the Court states that he did remove all the slips from the box in open court and under the direct observation of the Clerk and Sheriff, and everyone else in the court room. This was done for the purpose of separating the slips which were badly stuck together and for the purpose of thoroughly mixing the slips and separating them so that the

venire when drawn would come from the county in general and not from any particular locality. All this was done in open court and in full, plain public view of the court officers, attorneys and spectators. The names were written on large slips of extra heavy paper, and in placing them in the box when the list was made up by the County Commissioners, the slips were stuck together in bunches ranging from three slips to six or seven slips, and it was practically impossible, owing to the smallness of the box, to separate them and thoroughly stir them without removing them as was done, and immediately after they were separated and thoroughly stirred they were placed back in the box by the Judge.'

"Section 4444 and 4453 specifically prescribe the procedure to be followed in making up the lists of names of persons selected to serve as jurors and the method of placing them in the box. After the jury box has been made up as provided in these two sections, there is *no law or statute authorizing any one, not even the Court, to withdraw all the names from the box, nor to withdraw any names from the box, except as they are drawn as provided by statute for service as jurors.* To sanction this would be to invite the destruction of the integrity of the jury box, and would invite the destroying of the safeguards provided by statute for drawing the names of persons from the jury box for service as jurors in the courts of this State. We have to recognize that court officials, from the judge on the bench down, are human beings. The statutes recognizes this. We have no assurance that all court officials at all times will be immune from human weakness and outside influences. The motions to quash the venire and the panel should have been sustained." (Emphasis supplied).

In the case of Chance v. State, 115 Fla. 379, 155 So. 663, we said:

"In view of the statutory provisions governing the selection of jury lists by the county commissioners personally as a body, and of the purpose to insure not only the sacred integrity of the jury box, but to keep it free from reasonable suspicion or criticism, the courts should require the statutory functions of the county commissioners and other officials to be performed as required by the statute and in no other manner.

The testimony on the issue made by the State Attorney on the motion to quash the general and special venire is of such a nature that the motion should have been granted and appropriate orders made for the proper preparation of jury lists by the county commissioners in strict compliance with the requirements of the controlling statutes."

We think that it is not necessary to go beyond this jurisdiction for authority but to like effect is Clinton et al. v. Englebrecht 13 Wall U.S. 434, 20 L. ed. 659 and Greene v. State, 59 Md. 123, 43 Am. Rep. 542.

The statutes, Sec. 40.14 to 40.18, inclusive, Fla. Statutes of 1941 (same F.S.A.) mandatorily provide how and when names may be drawn or taken from the jury box.

In the case of Slayton v. State, supra, we held that the unauthorized removal of names from the jury box will foul the box and in Livingston v. State, supra, we held that the removal of names from the jury box, even temporarily and by the trial judge himself, fouled the jury box so no valid jury could thereafter be drawn therefrom.

It is contended that the allegations of the challenge to the array is deficient in that it does not allege the identity of the person or persons who removed the 40 to 45 names from the jury box. The identity of such person is immaterial because it makes no difference who did the act, the act fouled the jury box. When the jury box becomes foul it is in law exhausted because there are then no names in the box which may be drawn for the purpose of procuring a lawful jury.

Sec. 40.02 Fla. Statutes, 1941 (same F.S.A.) provides that the County Commissioners shall hold a meeting during the first week in January of each year or as soon thereafter as may be practicable *and at such other times as the Circuit Judge may order* for the purpose of selecting a jury list. The section then provides the manner in which the list shall be made and handled to accomplish the creation of a jury box. Paragraph 4 of this section provides that the Circuit Judge may require the County Commissioners to select *additional jury lists from time to time* as may appear to such Judge to be necessary to avoid the names selected becoming exhausted.

So it very clearly appears that holding the jury box to be foul need in no way embarrass the court or cause any material delay in its functioning. The court has ample statutory authority and judicial power to order the County Commissioners to select a new and valid jury list and to certify the names so selected to the Clerk of the Circuit Court for preparing a new and valid jury box from which lawful jurors could be drawn to serve as and when required during the remainder of the year.

The Legislature by Sec. 9 of Chapter 21973, Acts of 1943, repealed Sec. 40.19 Fla. Statutes 1941 (same F.S.A.) and enacted in lieu thereof Sec. 7 of the Act which became Sec. 40.42 1945 Supplement, Fla. Statutes 1941 (same F.S.A.) which section is as follows:

"When the venire is exhausted and when the names in the jury box become exhausted and during a term of court, then, the court may direct the sheriff to summon from the body of the county a sufficient number of qualified jurors to complete the panel."

This clarified the statute as it previously existed and left two methods available for the procuring of a jury under the circumstances such as existed here: (a) the court could direct the County Commissioners to prepare a list of additional jurors and certify the same to the Clerk of the Circuit Court to be recorded and the names on such list to be copied on separate pieces of paper and placed in the jury box *with the names already there* to constitute a valid jury box from which the jury for the trial of this case could have been drawn; or (b) the court might have continued to draw names from the jury box as it was at the time and thereby procure a panel for the trial of this case and if it should happen that the names in the jury box were exhausted before the panel was completed then the court could order sufficient talismen to be summoned from the body of the county to complete the jury. In either event the defendant had the right to have a jury drawn from the trial of his case from a box containing the names which remained in that box prior to June 25, 1946. He was deprived of this right by the unlawful removal of those names from the jury box before the jury was drawn to try his case. It,

therefore, follows that he was deprived of the right to submit his defense to a lawfully selected and empaneled jury. He was thus deprived of due process of law by an act which could not reasonably be held to be harmless error or to be merely an irregularity. It is elementary that no legislative act may deprive anyone of due process of law. So it is that Sec. 40.43, 1945 Supplement to Fla. Statutes 1941 (same F.S.A.) is not effective to legalize the infirmities and unlawful proceedings which are here complained of. The language of this section, viz: "or the omission of any clerical duty, or the commission of any other error in the selection, serving, drawing or empaneling of grand or petit jurors, shall not affect" etc. must be construed to refer to and mean errors of omission and commission which do not affect the substantial rights of a party. This is true because if a substantial right is abridged then in law an injustice is done and it constitutes a miscarriage of justice. The right to trial by jury lawfully selected is a substantial right and the administration of justice requires that such right be not denied. See State ex rel. v. Dellman v. Tedder 123 Fla. 188, 166 So. 590; Messer et al. v. State 120 Fla. 95, 162 So. 146; also State v. Rouner, 333 Mo. 1236, 64 S.W. (2nd) 916, 92 A,L.R. 1099; State v. McGee, 80 Conn. 614, 69 Atl. 1059, 31 Am. Juris. page 601, Sec. 61, pages 612 Sec. 78.

Another flagrant and egregious error complained of is that the mother of the alleged victim, while testifying as a witness in chief in behalf of the State, was allowed, over the strenuous objection of defendant's counsel to relate and give in evidence before the jury the statements made to her by her daughter, the alleged victim, not in the presence of the defendant, purporting to give in detail all the facts and circumstances leading up to and surrounding the commission of the alleged crime. Objections were duly noted to the overruling of defendant's objection. Such testimony was nothing but hearsay. It was incompetent and highly prejudicial.

It is well settled that in a rape case the testimony of the prosecutrix or other witnesses is admissible in corroboration of her testimony to show that shortly after the commission of the alleged offense she made a complaint and when and where and to whom it was made. Such evidence is admissible and is

admitted for the purpose of confirming the testimony of the ravished woman and not as proof that the crime was in fact committed, or as evidence of the truth of the fact complained of. Such evidence is merely to rebut the inference of consent that might be drawn from her silence. See 52 C.J. 1063 to 1065, inclusive; Ellis v. State, 25 Fla. 702, 6 So. 770 and cases there cited; People v. Wilmot 139 Cal. 103, 72 Pac. 838; Bray v. State 131 Ala. 46, 31 So. 107; State v. Bateman 198 Mo. 212, 94 S.W. 843; State v. Lawthon, 260 Mo. 306, 157 S. W. 344.

The testimony was not admissible as a part of the res gestae because it occurred some appreciable time after the alleged crime was said to have been committed and at some distance from the scene. See 44 Am. Juris. page 956, Sec. 85; also 20 Am. Juris. page 556 Sec. 662. In the latter citation the authority says:

"Expressed differently whether a declaration is a part of the res gestae depends upon whether the declaration was the facts talking through the party or the party talking about the facts." See Green v. State, 93 Fla. 1076, 113 So. 121.

The fact is that we might quote authorities without number to sustain our view in this regard.

There appears to be no question but what this was prejudicial error but it is contended that it is not before us for disposition, although it was properly objected to at the time it was offered and an exception reserved, because there is not sufficient identification of the alleged error in the motion for new trial. The only ground of the motion for new trial which the defendant, appellant here, contends referred to this particular error is the eighth (8th) ground, which is as follows:

"Because the court erred in the admission of certain evidence during the trial of the cause offered by the State over the objection of the defendant."

The alleged error might have been more definitely identified. It appears to us that such error was as definitely identified as was a certain error complained of in the case of National Union Fire Insurance Company v. Cone, 80 Fla. 265, 85 So. 913, of which this Court said:

"The 11th assignment is that the verdict allowing interest from December 1, 1916, is contrary to law. This is well taken, because, under the terms of the policy, the loss was not payable until sixty days after the proof of loss had been furnished; and the declaration and evidence show that the proof was not furnished until August 14, 1918. Therefore the interest allowed was excessive to the amount of $33.00 and a remittitur of that amount should be made. It is argued that the defendant cannot be heard to complain of this error because the court charged the jury that they might allow interest from December 1, 1916, and the defendant did not except to this charge. It is true that no exception at the time the charge was given is shown by the record, but, under the statute, a charge given by the court of his own motion may be excepted to in the motion for a new trial, and the motion for a new trial in this case assigns, among other matters, the following: 'Because the verdict fixing the rate of interest from December 1, 1916, is contrary to law.' This was sufficent to direct the attention of the trial court to the matter of interest, and the error should have been corrected."

We think in view of the character of the matter, that is the prejudicial hear-say testimony of the mother of the prosecutrix when she was testifying in behalf of the State, the Eighth ground of the motion for new trial, supra, was sufficient to bring such matter to the attention of the court and that it was the duty of the court, when such matter was brought to its attention, to grant the motion for new trial.

For the reasons stated, the judgment should be reversed, and the cause remanded for a new trial.

TERRELL, J., and WILLIAMS, Associate Justice, concur.

WILLIAMS, Associate Justice, Specially Concurring in the Dissent of Mr. Justice BUFORD:

The record, as I view it, reflects two harmful and reversible errors: (1) The challenge to the array of jurors by the document styled "Plea in Abatement," presented on time, and fully, a situation which showed the jury box was fouled and became illegal. (2) The witness to whom the victim first complained of the attack should not have been allowed to tell in detail all that the victim said.

Trial by jury means a jury selected according to law. See Taylor v. State, 117 Fla. 706, 158 So. 437. Sec. 40.02, et seq., F.S. 1941, F.S.A., provides the manner in which a jury should be selected and drawn in the lower court. The lower court, by order dated June 17, 1946, anticipating a deficiency of jurors for the trial, directed the County Commissioners of Broward County, Florida, to *replenish the jury box* by placing not less than 250, nor more than 500, names of jurors therein. (Emphasis supplied). There were forty or forty-five names of jurors already in the jury box. In unauthorized departure from the order of the court, the forty or forty-five listed jurors in the box were discarded from said jury box and 483 names of jurors were placed in the box. Had the order been followed by the County Commissioners, there would have been approximately 528 jurors' names in the box instead of 483. The challenge to the array was denied without any evidence being received thereon, so the allegations thereof are accepted as true. Taylor v. State, supra; Livingston v. State, 108 Fla. 193, 145 So. 761. Montgomery v. State, 53 Fla. 115, 42 So. 894; Hicks v. State, 97 Fla. 199, 120 So. 330.

It is claimed this was not harmful error, but was technical error. It is asserted that Chapter 40.43, F.S. 1941, F.S.A. Laws of Florida, 1943, Chapter 21973, Sec. 8, as follows:

"Any deficiency or excess of names placed in a jury box by the county commissioners, jury commission, or other authorized body, or the omission of any clerical duty, or the commission of any other error in the selection, serving, drawing or impaneling of grand or petit jurors, shall not affect the legality of the organization of any jury, unless it shall appear that such error has resulted in a miscarriage of justice"— presents the discard of the forty or forty-five names of jurors as harmless error. It appears that Sec. 40543, F.S. 1941, F.S.A., was enacted to cure oversight in county commissioners not placing the number of names of jurors in the box ordered or placing more names of jurors in the jury box than ordered. See Slayton v. State, 105 Fla. 586, 141, So. 87; Gladden v. State, 13 Fla. 623. This also was intended to take care of slight departure from an order for replenishment by deficiency or by excess, or other little clerical errors, but not harmful

errors, in selecting jurors, as occurred in this case, as the Statute concludes:

*"Unless it shall appear that such error has resulted in a miscarriage of justice."* (Emphasis supplied).

No reading of any of our statutes, in my opinion, on selection of juries, authorizes anyone without legal authority to remove names of jurors therefrom and destroy the same, as was done in this case. Of course, innocuous acts in selecting, drawing and impanelling a jury do not make a selection of the jury void. We recount some examples. The failure of Chairman of County Commissioners to sign the certificate of list of jurors. Young v. State, 63 Fla. 55, 58 So. 188. Selecting the jury beyond the January meeting. Reeves v. State, 29 Fla. 527, 10 So. 901. When four out of five commissioners select the jury list. Scott v. State, 106 Fla. 275, 143 So. 249. The failure of the Clerk to properly record the names of jurors, if their names are in the box. Morey v. State, 72 Fla. 45, 72 So. 490; Keech v. State, 15 Fla. 591. The fact that the names of jurors in the box are on thin paper that may be seen through does not render the selection invalid. McGuire v. State, 106 Fla. 934, 143 So. 766. The fact that jurors were drawn for the circuit court and used in Criminal Court of Record. McGuire v. State, supra. The fact that a juror's name is in the box twice does not destroy the integrity of the jury box. Green v. State, 40 Fla. 191, 23 So. 851. Harmless error in the selection and drawing of jurors is ably stated in Thompson and Merriam on Juries, Sec. 143, pp. 120-121, as follows:

"Statutory provisions respecting the drawing of the panel are generally regarded as directory merely, and irregularities therein, unless plainly operating to the prejudice of the challenging party, form no ground for challenging the array; as, for instance, where the names are drawn alternately for the two panels of grand and petit jurors, or where the officers failed to destroy the slips as drawn, containing the names of persons absent or deceased, and to draw others in their stead; or where the officers, having discovered an informality in the drawing, returned all the names into the box and began the drawing anew.

"Upon like consideration, a challenge was disallowed upon

the following facts, although presenting numerous informalities on the part of the officers charged with the drawing: The proper officers did not attend or witness the drawing; no minutes were kept of the jurors as drawn; no minutes of the drawing were signed or certified by any attending officer; some of the attending officers signed blank certificates, which the clerk filled up after the drawing; no copy of the minutes of the drawing were delivered to the sheriff; the ballots of the jurors drawn were delivered to the sheriff; the ballots of the jurors drawn were delivered to the sheriff, in lieu of a copy of the minutes, and from these he summoned the jury; the panel or list of jurors filed was not a copy of the minutes of the drawing. There was, however, no allegation of fraud or corruption against any of the officers who drew or summoned the jury, or certified to the list; neither was there any of injury or prejudice to the prisoner. And there are many cases where the irregularity might amount to a misdemeanor and subject the officers to punishment, and yet afford no ground for challenging the array."

Trial by jury is one of the bulwarks of our jurisprudence. Bassent v. Board, 92 Fla. 292, 109 So. 597. It is guaranteed by our constitution. Wiggins v. Williams, 36 Fla. 637, 18 So. 859, 30 L.R.A. 754; Spofford v. Brevard County, 92 Fla. 617, 110 So. 451. The law *must* be substantially followed in selecting and drawing jurors. Jurors selected by unauthorized persons invalidates the selections. Chance v. State, 115 Fla. 379, 155 So. 663. Other harmful instances of not properly following the statutes on acquiring jurors are: A judge cannot take names out of a jury box and place them back, over objections of defendant. Peacock v. State, 124 Fla. 33, 168 So. 401. A judge may not take out all listed jurors from the box momentarily, not for selection, and then place them back in the box. Livingston v. State, 108 Fla. 193, 145 So. 761. It is strictly against the law in this State for outsiders to participate in drawing jurors. Chance v. State, supra. In Hicks v. State, 97 Fla. 199, 120 So. 330, it was held that where the grand jury was not made up of legally constituted jurors, that fouled the trial before the taking of testimony. There we said, text 331:

"Two fatal errors appearing at the beginning of the trial of this case, which render it unnecessary for this court to consider all the assignments of error. They consist in sustaining the demurrer to the pleas in abatement and in the order denying the motion for leave to file additional pleas in abatement. The questions are sufficiently presented by special assignments of error, of which there are 97 in all."

In Thompson and Merriam on Juries, pp. 120-121, Sec. 143, the sine qua non of statutes for selecting and drawing jurors are:

"It is otherwise where the essential provisions of such a statute have been palpably disregarded; as, for instance, where the officers took the names from the list according to their discretion, instead of drawing them by lot; or assumed to reject names duly drawn as being names of persons unfit for jury duty; or where fifteen jurors only were drawn instead of twenty-four; or where names were put upon the panel by the clerk of the court at the request of the persons themselves, without being regularly drawn; or where the names of the jurors were drawn from an open box in such a manner that the names upon each ballot were exposed to view before being drawn; or where the clerk, having to draw two panels for different courts, drew the entire number of names at once, and then arbitrarily designated half of them to serve as jurors in one court and half in the other."

See also State v. Jordan, 101 Fla. 616, 135 So. 138.

In White v. State, 126 Fla. 760, 171 So. 809, on due process of law it was held by this Court that where the prosecution was void because of events before trial, the judgment should be reversed.

In the recent case of Thiel v. Southern Pacific Company, 326 U.S. 716, 66 S. Ct. 984, 30 L. Ed. 423, 166 A.L.R. 1412, the Supreme Court of the United States held that it was a fatal invasion of a defendant's constitutional right to trial by jury for officials to exclude laborers from jury lists. To say that County Commissioners or some unauthorized party may discard forty to forty-five names of jurors from the jury box with impunity collides with the reason, logic, philosophy and warning in Livingston v. State, supra; Chance v. State, supra.

If persons may without authority remove and destroy forty to forty-five listed names in the jury box without fouling the jury box, by such reasoning, it seems to me it would be hard to limit what number of names or jurors could be taken from the jury box under circumstances alleged in the challenge.

An alleged victim of rape adds credence to her charge if she immediately reports the same, and the person receiving the report is allowed to tell only the fact that the victim reported the rape and no more. In Ellis v. State, 25 Fla. 702, 6 So. 768, (text 770), we said:

"The court erred in allowing Alexander Wimberly to relate the details of the complaint made by Rilla Davis on the night of the commission of the alleged offense, and in refusing to strike out said evidence as hearsay.

"This was clearly error. Stephen v. State, 11 Ga. 225; State v. Niles, 47 Vt. 82; Baccio v. People, 41 N.Y. 265; Lacy v. State, 45 Ala. 80; State v. Richards, 33 Iowa 420; State v. Shettleworth, 18 Minn. 208 (Gil. 191); 1 Phil. Ev. 184; Holst v. State, 23 Tex App. 1, 3 S.W. Rep. 757; 2 Bish. Crim. Proc., Sec. 963; 1 Whart. Crim Law, Sec. 566; 1 Russ. Crimes, 923. The female outraged should seek the first opportunity to complain; and the fact that she does complain goes to the jury as evidence; but her detailed statement of the circumstances under which she was outraged cannot be given in evidence on the trial of the case by the party to whom she made the statement. Such testimony is hearsay, and it is calculated to confuse and mislead the jury, and is not permissible. . . . "

See also Turner v. State, 66 Fla. 404, 63 So. 708. Explanation, sanction and reason for the rule may be found in 44 Am. Jur. 952-955, Secs. 82, 83 and 84. In one sentence the mother told that the victim complained to her a few hours after the alleged rape that defendant had raped her. Then, contrary to the rule mentioned, this witness was directed to go into detail and tell how the victim said she had been attacked. Then the witnesses said what the victim said the accused said and did.

(a) She told what the victim said accused did with his clothes.

(b)  Told what victim said accused did to victim.

(c)  Told the place victim said the attack occurred.

(d)  Told what victim said accused made victim do.

(e)  Told what victim told her about the automobile in question.

(f)  Told what articles victim said were in the car involved.

The judgment should be reversed and the cause should be remanded to the lower court for a new trial.

ON REHEARING GRANTED

ADAMS, J.:

On July 15, 1947, we affirmed without opinion a conviction against this appellant of the crime of rape wherein he was found guilty with a recommendation and sentence to life imprisonment. Dissenting opinions were filed by Mr. Justice BUFORD in which Mr. Justice TERRELL concurred. Associate Justice Ross Williams, a Circuit Judge sitting in the absence of Mr. Justice SEBRING, also filed a dissenting opinion.

Subsequently we granted a rehearing and reargument and now proceed to reconsider the case as the court was constituted at the time of our former decision. See Fla. Motor Lines, Inc., v. Hill, 106 Fla. 33, 143 So. 261.

When the mother of the prosecutrix was a witness for the state and being interrogated by the state attorney the following occurred:

"Q. Mrs. Bowers. What did Mary Lou report to you that happened to her while she was gone?

"Mr. Roach: Just a minute, if it please the Court. Anything that Mary Lou told her unless it was in the presence of this defendant is not admissible and we object to her even answering those questions.

"Mr. Maire: My understanding has been that there has always been a rule in a rape case that the party is supposed to report it, how far we should be allowed to go into that I don't know.

"The Court: I think it is admissible because it is the first opportunity she had according to the evidence to make any statement, and she must make a statement at the first opportunity. All right, answer the question.

"Mr. Maire: What did she tell you after she got home?

"A. She told me she was walking along the street with this girl friend and that this man drove along in the car and got out and hit her over the head and forced her to get in the car and drove her back in the country somewhere and forced her to get out of the car, undress, and he attacked her.

"Q. How did she state she was attacked at that time?

"Mr. Roach: If it please the Court, we wish to interpose an objecion to the tales of what happened. He has gone beyond the period of reporting the thing as he says he thinks he has a right to do, and any detailed conversation as to what happened out there, or what this girl told her, not in the presence of the defendant, we wish to object to it.

"The Court: I thing it is admissible under the rule in regard to rape. There must be some statement made as soon as possible.

"Mr. Roach: The witness, if it please the Court, states that she knew the girl across the street, her people had called the police and reported it. Now he is going into a detailed statement as to what somebody told her outside the presence of this defendant bolstering the witness that he had.

"The Court: Overruled.

"Mr. Maire: Q. Go ahead and say what she told you, tell it in a little more detail. You said she said she had been attacked, how did she say she had been attacked?

"A. She said that this man took off his clothes and well I can't tell you exactly as she told me, she didn't know how to tell it really.

"Q. She must have told you some way.

"A. Well, it was by my questioning her. I asked her what he did to her and she told me in her own way.

"Mr. Roach: If it please the Court, that testimony shows it was not a voluntary statement on the part of this girl, and we wish to interpose objections as to what her questions

brought out from the complaining witness not in the presence of the defendant.

"The Court: Overruled.

"Mr. Maire: Q. What did she tell you had happened?

"A. Well,—.

"Q. Now, you have testified that she said the man hit her over the head?

"A. Yes.

"Q. Is that all she told you?

"A. Oh, no, I told you he took her back to this place, deserted place where there were no houses, and that he exposed himself and had her take off her clothes and attacked her.

"Q. Well, now there are various methods of attack, how did she say he attacked her?

"A. Well, I'd say he had intercourse with her.

"Q. Well, what did she say, what did the little girl say?

"A. She didn't know, she was innocent, she didn't know how to tell it. I kept questioning her when she told me he took her where she said he attacked her, I kept asking her and in that way drew it out.

"Q. Did she tell you the manner in which she did it so you could know that was what happened?

"A. Yes.

"Q. Did you examine the little girl?

"A. I didn't examine her, but I took her to the hospital immediately.

"Q. You never examined her at all yourself?

"A. No.

"Q. You, of course, knew nothing what happened except what the little girl told you?

"A. That is right.

"Q. Did she give you a description of the automobile?

"A. Yes.

"Do you remember what kind of description she gave of it?

"A. Yes, I heard the description from the police.

"Q. Well, did she give you a description of it when she got home?

"A. She told different things that were in the car, the mirror, there was something peculiar, a little different about the mirror, there was a little doll hanging on the mirror, a suitcase in the car, and a blanket on the back seat, and something on the floor of the car, she learned afterwards was a muffler. There was an empty candy box on the seat.

"Q. Did she give a description of the man that she claimed attacked her?

"A. She said she would know him again.

"Q. Did she give you a description?

"A. She said his hair seemed to have a dressing of some kind on it, that it stood up high, he had heavy eyebrows, and he was tall.

"Q. Is that in substance what she told you immediately upon her return to home?

"A. Yes."

The only reservation of this error in the motion for a new trial was in ground No. 8, which reads:

"Because the Court erred in the admission of certain evidence during the trial of the cause offered by the State over the objection of the defendant."

There can be no doubt of the error in allowing the mother of the girl who was raped to state in detail the circumstances going to prove the crime. It is even more objectionable because the mother relates not merely what her daughter said but from what was told her she drew her own inference and conclusion and gave these to the jury. This procedure has been disapproved as far back as Ellis v. The State of Florida, 25 Fla. 702, 6. So. 768. Complaint soon after the occurrence is permissible not to prove the crime itself, but to rebut the inference of consent which might be drawn from her prolonged silence.

The state insists that the judgment should not be reversed from this error because it was not saved by the motion for a new trial inasmuch as ground No. 8 above quoted was too general. This position is unsound. The rule prevailing here has been stated. Warner et al. v. Goding, 91 Fla. 260, 107 So. 406. (Headnotes).

"8. A motion for a new trial is not a waiver of exceptions, and if for any reason such motion cannot be considered in this court and the exceptions taken during the trial are properly embodied in the record, we can review the ruling of the Circuit Court in this respect.

"9. The primary purpose of a motion for a new trial under our practice is to test the sufficiency of all the evidence to sustain the verdict, though any portion of the evidence of a material witness may be reviewed by this court if such evidence was duly excepted to at the trial or hearing in the absence of a motion for a new trial."

The state also contends that the error was not assigned in this court and should not be considered. In this contention the state presupposes that this is not what may be regarded as a fundamental error. By an unbroken line of decisions in civil and criminal cases we are committed to the rule that a fundamental error may be reviewed though not assigned. Gover v. Braddock, 100 Fla. 1406, 131 So. 407; White v. Crandall, 105 Fla. 70, 137 So. 272; East Coast Stores v. Cuthbert, 101 Fla. 25, 133 So. 853; Bynum v. State of Florida, 76 Fla. 618, 80 So. 572. In the latter case the judgment was reversed for failure to grant a motion for new trial even though the error was not assigned.

Gunn v. State of Florida, 78 Fla. 599, 83 So. 511, in this case the judgment was reversed because of an erroneous charge involving a presumption of guilt though there was no assignment of error thereon.

To say that something is fundamental is to comprehend a primary factor as basically essential to the object and purpose in view. Here the purpose is the administration of justice in keeping with the Constitution. Convictions or hearsay testimony were disapproved long before the adoption of our Constitution and Bill of Rights which were promulgated in keeping with the established principles of the Common Law. The passage of time has shown that no phase of our law affords greater protection to personal liberty than the observance of tried and proven rules of evidence.

In this case ample opportunity was given the trial court to rule upon the objectionable testimony. Although no specific

assignment of error was filed in this Court the question has been strenuously argued. The charge is a most serious one. The error is most apparent in character and degree. From all these facts we are driven to the conclusion that the judgment must be reversed and a new trial awarded. We have examined the other assignments of error but find them without merit.

Reversed.

WILLIAMS, Associate Justice:

I concur in this opinion only so far as it agrees with my dissenting opinion and I adhere strictly to my dissenting opinion and request it be printed as my judgment herein.

KANNER, Associate Justice, concurring specially:

I am of the view that generally, when hearsay or incompetent testimony has been admitted as legal evidence over objection, and the evidence of the case is otherwise sufficient to sustain the judgment, on appeal, an assignment of error which fails to definitely specify the objectionable evidence cannot be considered by the Appellate Court. Maloy v. State, 39 Fla. 432, 22 So. 719; Strobhar v. State, 55 Fla. 167, 47 So. 4; and Green v. State, 121 Fla. 307, 163 So. 712. But, I am also of the view that when such character of evidence is permitted to go to the jury, after specific objections are interposed, to the extent and scope as was done in the instant case, this would be so harmful as to constitute error of which this court could take cognizance without the necessity of it being raised by an assignment of error. I concur, therefore, in the reversal of the judgment.

PER CURIAM:

The rationale of the courts judgment is that this cause is reversed, because of the introduction of the evidence given by the Mother of the alleged victim with reference to details of the outcry made after the crime was alleged to have been committed, and is remanded for a new trial.

THOMAS, C. J., TERRELL, BUFORD, CHAPMAN and ADAMS, JJ., concur.