383 So.2d 289 (1980)
James Henry McRAE, Appellant,
v.
STATE of Florida, Appellee.
No. 79-321.
District Court of Appeal of Florida, Second District.
May 7, 1980.
*290 Jack O. Johnson, Public Defender, and P. Douglas Brinkmeyer, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Judge.
James Henry McRae appeals eleven convictions and sentences arising out of a single amended information. We hold that under the circumstances the trial court's admission of certain hearsay testimony over timely objection leaves us no alternative but to reverse for new trial.
Four separate incidents are involved here. The victim, a sixty-three-year old widow, has been in America since 1960. She is Italian and speaks little English, and her testimony was elicited through an interpreter. She testified to the following events:
On June 12, 1978, at 2:30 a.m., a black man forced his way into her home, raped her, and took money while threatening her with a pen knife. She had never seen him before. He found a loaded gun in the bedroom, threatened to shoot her, ate some food, and raped her again. He then pulled the telephone wire out of the wall, took the gun and a few dollars, and left. When the man left, the victim, with the aid of an English-Italian dictionary, wrote a note to her landlord, mistakenly dated June 10, and delivered it the next morning to his office. However, she did not try to notify the police or anyone else of what had occurred.
On June 20, 1978, at about 3:00 a.m., the same man returned and ordered her to open the door, threatening to break the window if she did not let him in. When she opened the door, he pushed her into the bedroom, raped her, asked for $500, and wrote a note demanding that sum. He then left.
The victim went to her bank at about 10:00 that same morning to secure the money. Upon repeated inquiry from Marion Riley, a bank employee, the victim told her what had happened. Riley refused to give her that much cash and called the police. The police arrived, questioned her, took her to the hospital for examination, and returned her to her home.
The man returned a third time in the middle of the night of June 21, 1978, and banged on the door; she opened it because she knew he would break in again. He did not inquire about the $500, but pushed her into the bedroom again and raped her. She submitted out of fear. The man warned her not to tell anyone or call the police. He ate breakfast and fell asleep at the kitchen table. She awoke him one hour later, and he left at about 7:00 a.m. She then notified the police.
On June 26, 1978, at 7:00 p.m., the same man returned. She let him in, and he watched television until 11:00 p.m. On this occasion, the assailant did not demand sex or money. The police, who had been keeping an eye on the residence, arrived at 11:00 p.m. The victim acted excited and indicated with her eyes that the man in the house with her was the one who had been there before. The victim identified appellant as her assailant at trial. She testified that he had a rough beard on the first occasion and was missing the index finger on his right hand.
The landlord's secretary recalled receiving a note from the victim, but she did not understand its contents. No action was taken on the note. The note itself was admitted into evidence, but we think it fair to say that the note is utterly incomprehensible.
*291 Marion Riley, an assistant vice president of the bank, testified that she had known the victim as a bank customer for five or six years. On June 20, the victim came in and asked to withdraw $500 in cash. She appeared extremely upset. Over appellant's timely objection, Riley was permitted to testify that the victim said that "the man at the apartment" wanted money, he was coming back, and she had to give him the money. Riley also noted the beginning of a bruise on the victim's checkbone. After an hour or more, Riley was able to persuade the victim to allow her to call the police. They arrived and questioned the victim, using Andree Hoylman, another bank employee, as a translator.
Hoylman also testified. Appellant objected to this witness' being permitted to relate the substance of the conversation on the ground that such testimony would be hearsay. The trial court ruled that the victim's statements to Hoylman concerning the events of June 20 were admissible as part of the res gestae, but that the June 12 events were not to be gone into in detail. Hoylman testified that the victim told him that a man had come to her house the night before, sexually abused her, and told her that he wanted $500. She said that the man had been to her apartment a few days earlier and had raped her twice, fixed himself some food, ripped her telephone off the wall, stole things from her apartment, and told her not to call the police. She said she was afraid to call the police because the man had told her not to. Hoylman also noticed bruises and red marks on the victim's arms and neck.
Detective John Gaunt identified appellant as the man he found in the victim's apartment on June 26. Gaunt's first contact with the victim was on June 20. On that occasion, she described her assailant as missing his right index finger. Gaunt showed her a photopak, and she selected the photograph of one Pierce Ivory as that of her assailant. Gaunt arrested Ivory that same day. Gaunt went to see the victim on June 22, and she told him through Officer Piacenti, who speaks Italian, that her assailant had returned to her house the previous night. Ivory was therefore released from custody. The detective then initiated a stake-out of the victim's residence. On June 26, he went to the victim's residence and noticed that she was acting unusual and excited. Appellant was in the house with her. Because the detective could not understand the victim, he telephoned Piacenti, who spoke with the victim by telephone. Piacenti then informed Gaunt that she had said that appellant was the man who had been terrorizing her.
Piacenti also testified at trial. He testified that Gaunt telephoned him on June 26 and asked him to talk to the victim. He did so, and the victim said that the man in her house was the same man who had been there before and that she was positive of this. There was no objection to this testimony. The only objection was to Piacenti's attempt to relate what Gaunt had told him prior to putting the victim on the line, and Piacenti was instructed not to repeat what Gaunt had told him.
Appellant was arrested and subsequently gave a statement to Gaunt. He said that he had met the victim on the street and had been at her house only once before, on or about June 11, to talk, drink wine, and watch television. He denied having sexual intercourse with her and stated that he had been in the service in Italy and could speak Italian.
Appellant's major point on this appeal is that the testimony of Riley, Hoylman, and Piacenti concerning what the victim told them was hearsay and that the trial court therefore erred in admitting it.
While we agree that Piacenti's testimony was hearsay,[1] any error in admitting *292 it may not be reviewed on appeal in the absence of timely objection below. Tyler v. Triesback, 69 Fla. 595, 69 So. 49 (1915); G.W.B. v. State, 340 So.2d 969 (Fla.1st DCA), cert. denied, 348 So.2d 948 (Fla. 1977).
Timely objections were made to the challenged testimony of Riley and Hoylman, however, and the trial court erred in overruling these objections. A witness' testimony may not be corroborated by his own prior consistent statement. Van Gallon v. State, 50 So.2d 882 (Fla. 1951); Lamb v. State, 357 So.2d 437 (Fla.2d DCA 1978); Brown v. State, 344 So.2d 641 (Fla.2d DCA 1977); Roti v. State, 334 So.2d 146 (Fla.2d DCA 1976).
The state seeks to justify admission of the victim's statements to Riley and Hoylman as part of the res gestae. We cannot agree. In Custer v. State, 159 Fla. 574, 34 So.2d 100 (1948), the mother of a girl who was attacked and raped was permitted to testify as to what her daughter had told her about the attack only a few hours after the attack had occurred. This was held to be error.
In Lamb v. State, supra, the defendant's girlfriend testified that while she and the defendant were alone together in her kitchen, the defendant grabbed her by the neck, placed a gun to her temple, and stated he was going to kill her. He did not harm her, however, and left immediately. She then called the police and described the events to the officer who came out in response to her call. The officer was allowed to testify at trial as to what the victim had told him. This court held that the victim's statement to the officer was not admissible as part of the res gestae. "By the time the police arrived, the events of the crime had long occurred and terminated. Further in fact, Ms. Davis had time in which to reflect upon her statement." Id. at 439.
Here, several hours had elapsed between the June 20 events and the victim's statements to Riley and Hoylman, and eight days had elapsed between the June 12 events and the statements. We see no logical basis for distinguishing this case from Custer or Lamb. See also Annot., 89 A.L.R.3d 102 (1979). But see People v. Noble, 23 Mich. App. 100, 178 N.W.2d 118 (1970). We have found no authority for extending the res gestae doctrine to statements made days after the incident in question.
The admission of the challenged testimony cannot be considered harmless error. The state relied essentially on the testimony of the victim to establish appellant's presence in her house on June 12, 20, and 21 and his guilt of all of the charged offenses. Thus, the victim's credibility was crucial. Furthermore, the events she described are bizarre, to say the least, and the jury may well have relied heavily on the testimony of the two bank employees in assessing her credibility. Accordingly, we must reverse and remand for a new trial on all counts.
Inasmuch as appellant may be retried, we deem it appropriate to address the other two issues raised by appellant with regard to his sentences.
As aforementioned, appellant was charged with eleven offenses, all arising out of the four incidents detailed above. We are here concerned with counts 1-3, 5-6, and 9-10. Counts 1-3 arose out of the events of June 12. Count 1 charged appellant with burglary of the victim's dwelling during the course of which he "did make an assault upon the [victim], to-wit: [sic] involuntary sexual battery," and "did arm himself within said dwelling with a dangerous weapon, to-wit: [sic] a firearm," in violation of Section 810.02(2), Florida Statutes (1977). Counts 2 and 3 each charged appellant with sexual battery. Counts 5 and 6 arose out of the events of June 20. Count 5 charged appellant with burglary during the course of which he "did make an assault upon the [victim], to-wit: [sic] involuntary sexual battery," while count 6 charged him with sexual battery. Counts 9 and 10 are the same as counts 6 and 5 respectively (count 9  sexual battery, count 10  burglary) *293 except that they are alleged to have occurred on June 21. Appellant was found guilty as charged of each of these offenses and given a separate sentence on each.
Appellant contends that it was a violation of double jeopardy for the trial court to enter judgment and sentence on counts 2 and 3 as well as on count 1, on count 6 as well as on count 5, and on count 9 as well as on count 10, relying on Pinder v. State, 366 So.2d 38 (Fla.2d DCA 1978), aff'd, 375 So.2d 836 (Fla. 1979), and Ennis v. State, 364 So.2d 497 (Fla.2d DCA 1978). This is so, appellant argues, because each sexual battery (counts 2-3, 6, and 9) was pled and proved as an essential element of the burglary occurring on the same date (counts 1, 5, and 10 respectively).
We agree as to counts 6 and 9. Burglary may be a first, second, or third-degree felony, depending upon the allegata and probata. § 810.02, Fla. Stat. (1977). To convict a defendant of first-degree felony burglary, the state must plead and prove not only the essential elements of burglary as defined in Section 810.02(1), but also that, in the course of committing the burglary, the defendant either made an assault upon a person or was armed or armed himself within the structure with explosives or a dangerous weapon. In counts 5 and 10, the state charged appellant with first-degree felony burglary by including in the charging language the allegation that, during the course of the burglary, appellant made an assault, to wit: sexual battery, upon the victim. In order to convict appellant of the charged offense, the state had to prove that appellant committed a sexual battery upon the victim. Thus, the finding that appellant committed a sexual battery was indispensable to both first-degree felony burglary convictions, and appellant could not be convicted of both the burglaries and the assaults (sexual battery) which served as the basis therefor. State v. Pinder, 375 So.2d 836 (Fla. 1979).
Appellant's argument with regard to counts 2 and 3 is not meritorious, however. Count 1 charged both that appellant committed an assault (sexual battery) and that he armed himself within the structure. Since proof of either of these allegations would sustain his conviction and since the jury's verdict indicates a finding that both of these allegations were established, the assault allegation may be regarded as surplusage for the purposes of this opinion. In other words, if the jury found that appellant armed himself, which it did, it was not also required to find that he committed the assault alleged (sexual battery) in order to convict him of first-degree felony burglary. Since the finding that appellant committed a sexual battery was not indispensable to his conviction of the burglary charged in count 1, appellant could be convicted of both the sexual batteries charged in counts 2 and 3 as well as the burglary charged in count 1. State v. Pinder, supra.
Finally, the judgment and sentence entered by the trial court included the following language: "IT IS FURTHER CONSIDERED AND ORDERED by the Court that the defendant NEVER be considered for release." Appellant contends that the inclusion of this language was improper because there is no authority for such a provision. We agree. The trial court had authority under Section 947.16(3), Florida Statutes (1978 Supp.) to retain jurisdiction over appellant for the first third of the maximum sentence imposed for the highest enumerated felony[2] charged and proven which was committed after its effective date, June 19, 1978, Ch. 78-318, Laws of Florida. Beyond this, however, the granting of parole is within the sole discretion of the Probation and Parole Commission. § 921.21, Fla. Stat. (1977).
Accordingly, appellant's judgments and sentences are REVERSED and the cause REMANDED for further proceedings consistent with this opinion.
GRIMES, C.J., and RYDER, J., concur.
NOTES
[1] Under the Florida Evidence Code, applicable to criminal proceedings related to crimes committed after its effective date, § 90.103(2), Fla. Stat. (1979), Piacenti's testimony would not constitute hearsay. Section 90.801(2)(c) provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement and if the statement is "[o]ne of identification of a person made after perceiving him." However, because the crimes in question here were committed prior to the effective date of Section 90.801, July 1, 1979, Ch. 78-379, § 1, Laws of Fla., this section is not applicable here.
[2] The enumerated felonies involved here are burglary (counts 5 and 10), sexual battery (counts 6 and 9) and robbery (count 7).